54443. INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS et al. v. BRISCOE.

WEBB, Judge.
Adrian Lee Briscoe obtained employment in January, 1976 as a superintendent for F. A. Tucker Construction Company which had a contract to build for Georgia Power Company the Bonaire to Baxley 500 KV transmission line. For some 18 years he had been a linesman, a foreman and a general foreman engaged in the construction of large electrical transmission lines and the steel structures which support those lines. Nine or ten years of that time he had been a member of defendant International Brotherhood of Electrical Workers, but his membership terminated in 1974. In that year, construction business having declined and Briscoe being unemployed, he accepted a 3-day job with the City of Hampton. The union, Local No. 74, filed charges against him for working on a nonunion job, and after trial the union found him to be in violation of its rules and assessed

him $500, the amount he had been paid on the nonunion job. Briscoe chose not to pay the assessment and forfeited his membership in the union.

In late 1975 Briscoe responded to an advertisement in the Atlanta Journal that nonunion line work was available with the Tucker Company on the Bonaire Project. He was invited for an interview in Atlanta and referred to Wilbur Morrow, whom he knew and who was project manager. Morrow telephoned him, and he went to the job site at McRae for another interview. At that time he told Morrow of his former union membership and how he forfeited that membership. He was assured by Morrow, who himself was a 35-year union member, that this would present no problem. They discussed the specifics of his prospective job and reviewed the project, the builder's particular needs, the hourly pay rate of $8.70, the guaranteed 40-hour work week, his use of a company truck, overtime compensation, the length of the job — approximately 15 months — and that Briscoe would be superintendent of the steel yards. The project manager wanted him to go to work the next day, but Briscoe for personal reasons said he couldn't report until the following Monday, January 12, which he did.

The union had as steward on the job the other defendant in this case, Clifford Taylor. The union steward was appointed by the fifth district vice president of IBEW to try to handle grievances between employees and the company and to report only to the vice president of IBEW. Those grievances which could not be settled between himself and the foreman would be submitted by the steward to the International vice president. The steward and Briscoe had exchanged greetings when Briscoe went to see the project manager, at which time Briscoe told him why he came. On the day that Briscoe reported to begin his work, the steward came to the project manager's office, drew him aside and conversed out of Briscoe's hearing. The steward told the project manager about Briscoe's former relationship with the union, that a lot of the people in the local didn't like him, that union men didn't want him on the job, that the men wouldn't work for the foreman under Briscoe if Briscoe were on the job, and that there would be trouble — there "was going to be

problems." The steward testified that the kind of trouble he was talking about could affect the project manager, his position, and his performance "to get the job done," that one of the problems if Briscoe were retained could be "a work slow-down," and that the four men then on the job would not work for Briscoe. After the conversation with the union steward, the project manager discussed it with Briscoe and told him that as a result it would be necessary to discharge him from employment.

Briscoe filed his complaint against IBEW, John B. Pate as its vice-president, and Clifford Taylor, as an employee and representative of the union, alleging his employment by F. A. Tucker Construction Company, and that the defendants maliciously and wilfully intimidated and coerced or caused Tucker to break its employment contract with him, for which he sought damages in lost wages, punitive damages, and attorney fees.

A motion to dismiss J. B. Pate as a defendant was sustained. Motions to dismiss the action on grounds of federal pre-emption of subject matter and personal jurisdiction, and to dismiss IBEW on grounds there was no evidence that it participated in or authorized any interference with Briscoe's employment contract, were denied. The jury returned a verdict of $20,000 damages plus $3,915 attorney fee, and judgment was entered thereon. IBEW's and Taylor's motion for new trial was denied. In their appeal they enumerate seven alleged errors.

Before going into the merits of the appeal, however, we give attention to Briscoe's request that the appeal be dismissed or in the alternative each of the enumerated errors be declared abandoned and the judgment thereby affirmed. His request is based on the fact that the enumeration of errors and the brief for IBEW and Taylor were not filed with the clerk within 20 days after the case was docketed in his office pursuant to Rules 14 (a) and 16 (a) of this court (Code Ann. §§ 24-3614 (a) and 24-2616 (a)).

The motions are denied. Rule 14 (a) provides that "Failure to file the enumeration of errors within the time specified. . . shall subject the offender to contempt. Failure to comply with an order of this court directing the filing of the enumeration of errors shall cause the appeal to be

dismissed." In this case the filing of the enumeration of errors and the brief was three days late, but no order had yet been issued directing the filing of the enumeration of errors. Had an order been issued, it is not likely to have provided less than three days. While the tardiness here does not meet with our approval and the rule was not complied with, we shall not now dismiss the appeal on the grounds argued.

1. IBEW and Taylor charge error in the trial court's denial of their motion to dismiss for lack of subject matter and personal jurisdiction, in that the National Labor Relations Act pre-empted that jurisdiction and vested this type of complaint exclusively in the National Labor Relations Board. They argue that this case (a) does not fall within the purview of *Sheet Metal Workers Intern. Assn. v. Carter,* 133 Ga. App. 872 (212 SE2d 645) (1975), upholding the exercise of state court jurisdiction in a tort action for wilful and malicious conspiracy; (b) is controlled by Farmer v. Carpenters Local 25, —- U. S.—- (97 SC 1056, 51 LE2d 338) (1977), holding that exercise of jurisdiction by state courts may not be based upon discrimination in employment opportunities; and (c) alleges conduct which, if proved, would constitute unfair labor practice, thereby placing the cause within the exclusive jurisdiction of the NLRB within the scope of San Diego Building Trades Council v. Garmon, 359 U. S. 236, 244 (79 SC 773, 3 LE2d 775) (1959).

(a) We ruled in *Sheet Metal Workers Intern. Assn. v. Carter,* 133 Ga. App. 872, supra (cert. den. 423 U. S. 1078 (96 SC 866, 47 LE2d 89)), that the state court had jurisdiction of that action for malicious tort. There, as here, the question was presented whether the NLRA pre-empts state jurisdiction in an action based upon a tort conspiracy brought by an employee against a labor union and its local. The employee union member alleged "the parent union and its local conspired together, maliciously and wilfully, to deprive the plaintiff of his employment in the Sheet Metal Industry" and "maliciously, and without probable cause therefor, used the threat of union coercion and pressure to cause [him] to be denied employment of a job in his industry for which he was ready, willing and able to perform." Ibid., pp. 872-873.

Here, instead of an action by an employee union member, we have an action for damages by a nonunion person whose employment was terminated allegedly because the union and its steward "maliciously and with full intent intimidated and coerced. . . or caused F. A. Tucker Construction Company to be intimidated and coerced into breaking its contract" with him.

In the *Sheet Metal* case Judge Clark, in an opinion the logic of which we cannot improve upon, and the legal conclusions of which we will not seek to impair, states that, "[a]lthough the appellant Unions argue that this remedy [to take affirmative action including reinstatement of employees with or without back pay] would enable the NLRB to make the plaintiff whole, it is obvious that it does not include power to award him exemplary damages or attorney fees. Under Georgia law a plaintiff has the right upon presentation of proper proof satisfactory to the court and jury to receive punitive damages (Code § 105-2002). Reasonable attorney fees also may be awarded in certain instances." Ibid., p. 875. The power of the NLRB is limited by the provisions of the federal statute. "Congress did not establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct." International Union U.A.W. v. Russell, 356 U. S. 634, 643 (78 SC 932, 2 LE2d 1030, 1037) (1958). The Supreme Court ruled therein that the plaintiff was entitled to maintain his action in the state jurisdiction for all damages caused by the alleged tortious conduct. It is our unqualified view, contrary to the argument of IBEW and Taylor, that the instant case does fall within *Sheet Metal Workers Intern. Assn. v. Carter,* supra.

(b) We do not agree that the case at bar is controlled adversely by the recent holding of the Supreme Court in Farmer v. Carpenters, Local 25, —- U. S. —-, supra. There in a state court action a union member sought against his union recovery for damages for outrageous conduct, threats and intimidations which caused him emotional distress, alleging that the union had discriminated against him in referrals for employment in its hiring hall because of his dissident political activities, and that the union had breached its collective-bargaining agreement

with a contractors association by failing to refer him on a nondiscriminatory basis.

Justice Powell, speaking for the court in Farmer said: "We also have refused to apply the pre-emption doctrine 'where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes.' Motor Coach Employees v. Lockridge, 403 U. S. at 297-298 (91 SC at 1923)." Farmer (97 SC at 1062, 51 LE2d at 348).

There is little risk here that the state cause of action would interfere with the effective administration of national labor policy. Here, as Justice Powell stated, "Viewed . . . in light of the discrete concerns of the federal scheme and the state tort law, that potential for interference is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens." Farmer (97 SC at 1065, 51 LE2d at 352).

(c) IBEW and Taylor, as was done in *Sheet Metal,* supra, argued ably that the subject is covered by the NLRA, 29 USCA §§ 157 and 158, and therefore exclusive jurisdiction of the matter rests with the NLRB. Counsel for the union and Taylor here too quote from and rely heavily upon the decision in San Diego Building Trades Council v. Garmon, 359 U. S. 236, supra. Judge Clark's statements in *Sheet Metal* are so applicable that we quote them rather fully. "There Justice Frankfurter pointed out the basic point: 'The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy.' Id. p. 246. To avoid this hazard the tribunal established the principle which appellants here assert that 'when an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the Federal courts must defer to the exclusive competence of the National Labor Board if the danger of State interference with National policy is to be averted.'

"We noted (as did appellants) that the Garmon case also states at its conclusion on page 247 that previous

holdings '. . . have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order . . . [and] to enjoin such conduct.'

"It is true that the instant case does not involve the specific excepted circumstances of violent conduct and imminent threats to public order. Nevertheless, it must be observed that there are other situations where state court jurisdiction is appropriate. Thus, in Linn v. United Plant Guard Workers, 383 U. S. 53 (86 SC 657, 15 LE2d 582) (1966) the court ruled the state judicial remedy of a tort suit by an aggrieved individual was available for malicious libel occurring during a union organizing campaign. There it was held that the state remedy for malicious libel could be pursued along with an NLRB remedy if the conduct complained of also constituted an unfair labor practice. In short, both the state and federal remedies would be available in appropriate cases when they are not inconsistent.

"Subsequently in Taggart v. Weinacker's, Inc., 397 U. S. 223 (90 SC 876, 25 LE2d 240) a concurring opinion by Chief Justice Burger enlarged upon the situations wherein state jurisdiction existed in labor cases. We deem the Chief Justice's views to be applicable to the instant appeals. At page 228 he said 'Garmon left to the States the power to regulate any matter of "peripheral concern" to the NLRA or that conduct that touches interests "deeply rooted in local feeling and responsibility." (359 U. S. at 243, 244). Few concepts are more "deeply rooted" than the power of a State to protect the rights of its citizens.' "

We do not agree that the union and its representative, Taylor, placed the cause within the exclusive jurisdiction of NLRB under the Garmon decision.

(d) For an additional reason, the state court was not pre-empted by the NLRA. The Act provides that "[t]he term 'employee' shall include any employee . . . but shall not include any individual employed as . . . a supervisor . . ." 29 USCA § 152 (3). "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall,

promote, discharge, assign, reward, or discipline other employees, or *responsibility to direct them* . . . if . . . such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 USCA § 152 (11). (Emphasis supplied.) Only one of the enumerated powers need be present to qualify an employee as a "supervisor." NLRB v. Gray Line Tours, Inc., 461 F2d 763 (CCA 9, 1972); Wisconsin River Valley District Council v. NLRB, 532 F2d 47 (CCA 7, 1976).

The uncontroverted testimony was that Briscoe was coming to work as a superintendent for the contractor, that he was "to run" the steel yard, and get "the materials all unloaded and stored, and then getting it out on the right-of-way." "Superintendent" is defined as "one who has the oversight and charge of some place, institution, department, or the like; with the power of direction; as, the superintendent of public works" and is synomymous to "inspector, overseer, manager, director, supervisor." Webster's International Dictionary, 2d Ed. Also, "One who superintends or has the oversight and charge of something with the power of direction . . ." Black's Law Dictionary, 4th Ed. One "employed as a sawmill and box factory superintendent . . . must, of necessity, be regarded as a supervisor" within the meaning of 29 USCA § 152 (11). Baun v. Lumber & Sawmill Workers Union, 46 Wash. 2d 645 (284 P2d 275) (1955).

Able counsel for IBEW and Taylor point out Section 8(b)(1)(B) of the NLRA (29 USCA § 158(b)(1)(B)) which provides: "(b). It shall be an unfair labor practice for a labor organization or its agents—(1) to restrain or coerce . . . (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances"; and cite Iron Workers v. Perko, 373 U. S. 701 (83 SC 1429, 10 LE2d 646) (1963). In Perko the court said: "[I]f a union forces an employer to discharge a supervisor, such conduct may well violate § 8(b)(1)(B) because it coerces the 'employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances.'" Whether an individual is a "supervisor" in a questionable case is for the NLRB. Ibid., 373 U. S. at 708 (10 LE2d at 651).

In the case at bar, however, the evidence and the

Memorandum of Understanding between the union and the employee show that in union matters the "employees" would deal with the union steward, Taylor, who would in turn discuss any unsettled matters with the foreman and the project manager.[1] Briscoe represented the contractor on the job in only a directory and supervisory capacity, and any discussions between the employees and the employer concerning the Memorandum of Understanding or matters of union concern would not involve him. Furthermore, Briscoe was not the employer, and as we see it he would have no standing to bring an employer's complaint of coercion before the NLRB.

"It has long been recognized that supervisors are not entitled to the protection afforded 'ordinary employees' under the Act, and that 'as to supervisors there can be no such thing as a discriminatory discharge or an unfair labor practice.' NLRB v. Fullerton Publishing Co., 283 F2d 545, 551 (9th Cir. 1960); see 29 USC § 152 (3); NLRB v. Bell Aerospace Co., 416 U. S. 267, 274 n. 4, 94 SC 1757, 40 LE2d 134 (1974)." NLRB v. Silver Bay Local Union, 498 F2d 26, 28 (CCA 9 1974).

2. IBEW and Taylor next assert as error the refusal of the trial court to dismiss the action as to IBEW because the union was not a proper party. We do not agree.

Taylor, the IBEW job steward, testified that he was sent to the job in that capacity by J. B. Pate, the fifth

---

[1]
"Memorandum of Understanding

"9. An International Steward will be placed on the job and will report only to the International Vice President of the Fifth District IBEW or his Representative.

"10. Any grievance arising on the job that cannot be settled between the Foreman and the International Steward will be submitted to the Fifth District Vice President's office and the President of the Company or his designated representative. In cases where dispute cannot be settled between the two, it shall then be submitted to the Council of Industrial Relations for final adjudication."

district vice president; that Pate "told me that I would have to go down there and to be a good job steward; that any grievances come up between the men and employer, that I would have to settle it, and then if I didn't settle it, then I would have to go up to Mr. Blackie Morrow. If he didn't settle it there, then I would have to get in touch with the Fifth District, that would be Mr. J. B. Pate"; that if the company needed additional employees, "They tell me how many men and what qualifications they had, and I call Mr. J. B. Pate, Fifth District." Pate also testified to the foregoing; that a steward's primary duty was to settle grievances and complaints the union member employees "have with the employer. A steward's duty is to see that the agreement [Memorandum of Understanding] is lived up to by both parties, employer and employee"; and that he represents the union in his efforts to settle grievances between the company and the union. IBEW was the only union on the project, the job steward was named by its fifth district vice-president, and he, the union job steward, when talking to the project manager, referring to Briscoe in his own testimony said *"We* have had problems" (emphasis supplied), obviously speaking from his position as agent and union job steward for IBEW.

"Questions of the existence and extent of an agent's authority are for the trier of fact." *City of Gainesville v. Pritchett,* 129 Ga. App. 475, 476 (3) (199 SE2d 889) (1973). Here the agency was established by the admission of both the principal and the union steward.

3. The union and its job steward charge error in the denial of their motion for new trial, which was based on the grounds that the verdict was contrary to the law and the evidence, strongly against the weight of the evidence, and contrary to the principles of justice and equity. A mere statement of contentions unsupported by citation of legal authority is insufficient, and the enumerated error must be deemed abandoned under Rule 18 (c) (2) of this court. Code Ann. § 24-3618; *Patterson v. Professional Resources,* 140 Ga. App. 315, 316 (3) (231 SE2d 88) (1976).

4. Error is assigned on the trial judge's charge to the jury on apparent authority, but there is no accompanying reference to the record or transcript which would show that the citations of cases have a direct bearing on this

issue. Where an assignment of error on the charge of the court and the brief fail to set out the portion of the charge referred to, or any references to the evidence in the transcript to support their contention, the alleged error is too indefinite, and this failure to argue properly constitutes an abandonment and the enumeration will not be considered. Rule 18 (c)(2), 18(c)(3). *McCollum Mfg. Co. v. DOT,* 135 Ga. App. 815 (218 SE2d 926) (1975).

5. For their fifth enumeration of error the union and its job steward assert that the trial judge erred in failing to charge the jury on the questions of privilege or justification. Nowhere, however, do their counsel make reference to the location of the pertinent point or quotation from the testimony in support of their contentions on the issue of "justification" or "privilege."

Rule 18 (c) (3) of this court, as heretofore cited, provides that reference to the contents of the brief of the appellant required to be filed, that each enumerated error shall be supported by specific reference to the record or transcript or both, and that any argument or assertion founded on a particular portion of the evidence must be supported by a reference to the page or pages of the transcript where the evidence may be found. This rule is binding on those who practice in this court and must be observed, and we consider the enumeration abandoned.

(a) Even so, however, what was the justification?

The union steward's parting words in his testimony were: "[H]e could have had a job right here in the State of Georgia if he would have kept the union ticket and kept it paid up. He could have been working right down there on that particular job as a union man." In Georgia it is unlawful to infringe upon an individual's employment rights either because he is or is not a member of a union. Code Ann. § 54-804. See *NAACP v. Overstreet,* 221 Ga. 16 (142 SE2d 816) (1965) (cert. dismissed, 384 U. S. 118 (86 SC 1306, 16 LE2d 409), rehearing den., 384 U. S. 981 (86 SC 1857, 16 LE2d 692) (1966)).

"A request to charge itself must be correct, legal, apt, even perfect, and precisely adjusted to some principle involved in the case. If any portion of the request is inapt or incorrect, denial of the request is proper." *Slaughter v. Linder,* 122 Ga. App. 144 (2b) (176 SE2d 450) (1970);

*Parsons v. Harrison,* 133 Ga. App. 280 (3) (211 SE2d 128) (1974).

Defendants' requested charge No. 8 reads: "I charge you that in order for the Jury to find that Defendants maliciously interfered with Plaintiff's contract rights, you must find that Defendants acted knowingly, that there was no legal justification or excuse for their actions, and that Defendants had no privilege to take the actions which induced the employer to breach the contract with Plaintiff." The principal may be held liable for the tortious acts of his agent committed within the scope of his business, although without his command or assent. *Planters Cotton Oil Co. v. Baker,* 181 Ga. 161, 163 (181 SE 671) (1935); *Piedmont Cotton Mills v. General Whse.,* 222 Ga. 164, 168 (2) (149 SE2d 72) (1966).

Defendants' requested charge No. 9 delineated five factual areas for the jury to consider, which to some extent infringed upon the exclusive province of the jury. The trial court properly refused it.

(b) What was the privilege?

Defendants' request No. 10 reads: "I charge you that an employee has a privilege to take legal and proper actions to induce his employer not to enter into a contract where the purpose of the employee in taking such actions is to protect the best interests of the employer." They cite *Braden v. Haas, Howell & Dodd,* 56 Ga. App. 342, 346 (192 SE 508) (1937). In *Braden* there was no contract. Here the uncontroverted evidence shows that Briscoe had already been employed by Tucker; there was a contract. The requested charge was not suited to the facts, and denial was proper. *Joiner v. Joiner,* 225 Ga. 699 (5) (171 SE2d 297) (1969).

6. The defendants next contend as error the trial court's charge on ratification.

We fail to find in the record any place, and counsel for the defendants have not cited it, where they made any objection whatsoever to the charge on ratification. There must be a proper objection *"after the court instructed the jury and before the jury returned a verdict,"* so as to meet the requirements of Code Ann. § 70-207 (a). *Atlanta Americana Motor Hotel Corp. v. Sika Chemical Corp.,* 117 Ga. App. 707, 710 (161 SE2d 342) (1968). Failure to except

in effect amounted to a waiver. *Mack v. Barnes,* 128 Ga. App. 328, 330 (3) (196 SE2d 684) (1973).

We do observe that the fifth district vice president of IBEW testified on cross examination that he thought Taylor "would make a good international steward is the reason I appointed him, and he evidently did."

7. The final enumeration is that the trial court erred in charging the jury upon principles of negligence and negligence as a matter of law, and appellants specify five separate paragraphs of the court's charge. There was no objection to the first paragraph properly and timely made, and it will not be considered. Code Ann. § 70-207 (a), supra.

(a) IBEW and Taylor objected to the charge, "A tort may be committed intentionally, recklessly or through ordinary negligence," and they put their emphasis on the words "ordinary negligence." The intention of Taylor's act was uncontroverted, and the words in that sentence are no more than surplusage. When viewed in the light of the charge as a whole, they could not have been harmful to either party. Their use occasions no sensible ground for reversal. *Parker v. Adamson,* 109 Ga. App. 172, 176 (3) (135 SE2d 487) (1964). The whole charge, not just scattered and disjointed fragments, must be considered. *Edwards v. Delvero,* 139 Ga. App. 880, 881 (2) (229 SE2d 763) (1976).

(b) The labor union and its job steward objected to the following instruction as not relevant: "The court further charges you a violation of a state statute is negligence as a matter of law, imposing liability on the violator to the extent that any such violation contributed proximately to the claimed injuries." That is a correct statement of a legal principle, and any desired clarification of the charge should have been requested in writing. Code Ann. § 70-207 (b); *Peek v. Miller,* 119 Ga. App. 138, 139 (4) (166 SE2d 377) (1969). The trial court did not state that there had been a violation of a state statute. Whether Taylor had contravened Briscoe's employment rights as provided by Code Ann. § 54-804 was for consideration by the jurors.

(c) The next portion of the charge to which IBEW and Taylor objected read: "The Court further charges you the principal shall be bound for the care, diligence and

fidelity of his agent in his business, and hence he shall be bound for the neglect of his agent in the transaction of such business."

The foregoing is a verbatim statement of Code Ann. § 4-311 omitting the words "and fraud." Appellants excepted to the charge "on the grounds that the principal can be bound only by those acts of the agent within the scope of his agency, whether actual or apparent." We find no error in the charge as given.

(d) A part of the court's charge was "that damages are given as compensation for the injury done, and generally this is the measure where the injury is of a character capable of being estimated. Thus, if a tort is committed through ordinary negligence, damages are determined by the actual injury to the aggrieved party." The last sentence quoted is objected to by the union and its international job steward "on the grounds this charge includes language of negligence." Nowhere did the trial judge charge that the jury might find the appellants liable on the basis of ordinary negligence alone. From our review of the charge, it as a whole conveys the proper status of the law, it is not misleading, and we find no harmful error.

*Judgment affirmed. Deen, P. J., and Birdsong, J., concur.*

ARGUED SEPTEMBER 7, 1977 — DECIDED SEPTEMBER 19, 1977 — REHEARING DENIED OCTOBER 5, 1977 — 

*Fink, Young, Meyers & McLam, Fredrick C. McLam, Charles M. Richards,* for appellants.

*Novy & Rumsey, Eugene Novy, Penelope W. Rumsey,* for appellee.