## 61734. JONES v. LOCAL 926 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS et al.

SOGNIER, Judge.

This appeal raises the question whether the National Labor Relations Act preempts state jurisdiction in a case brought by a

non-union employee against a union and employer for tortious interference with and conspiracy to deprive the plaintiff of his contract of employment.

Appellant Jones was offered employment by Superior Consolidated, one of the project contractors on the construction of a Georgia Power Company generating plant. Jones was employed as equipment maintenance superintendent by Superior and Georgia Power.

Jones is a former member of Local 926 of the International Union of Operating Engineers, but had not been a union member for four years. Archer was the business agent for Local 926 in 1974 when Jones stopped paying union dues and went to work for a non-union contractor. Archer is still the business agent for Local 926 and allegedly objected to Jones' employment as equipment maintenance superintendent.

Jones reported for work at the plant construction site on June 12, 1978. By agreement with Superior, Jones took the rest of the week off and reported back to work again on June 20, 1978. On the later date, a meeting took place among officials of Georgia Power, Superior and Local 926, represented by Archer, regarding the maintenance problems that had arisen at the plant which indicated a need for the hiring of an equipment maintenance superintendent. After this meeting, Jones was informed that his services would not be required in that position.

On June 28, 1978, Jones filed charges with the National Labor Relations Board charging Local 926 with procuring his discharge because he was not a member in good standing of the union. After a preliminary investigation of the charged violation of Section 8 of the National Labor Relations Act, the regional director of the NLRB concluded that there was insufficient evidence of an unfair labor practice to issue a formal complaint. Jones did not appeal this decision.

In December 1978, Jones filed suit in the State Court of Fulton County against Local 926, Archer and Georgia Power alleging (1) that Archer, acting as agent for Local 926, maliciously and intentionally coerced Georgia Power into breaching its employment contract with Jones and (2) that Georgia Power maliciously and intentionally discharged Jones because of his non-membership in the union. Appellant amended his complaint alleging that Georgia Power and Local 926 conspired to deprive him of his employment and interfered with his right to employment. Jones prayed for damages for lost wages, plus punitive damages and attorney fees.

Appellees moved to dismiss Jones' complaint on the ground that the trial court lacked jurisdiction to hear the case in that the subject

matter of the complaint was preempted by the National Labor Relations Act. Appellees' motion to dismiss was granted and Jones appeals.

1. Appellant contends that the trial court erred in dismissing the action for tortious interference with an employment contract based on preemption by the NLRA.

(a) "Our courts have spoken loud and clear as to the right of one to earn a livelihood, and to seek redress against anyone who wrongfully causes him to be discharged from employment." *Wiley v. Ga. Power Co.,* 134 Ga. App. 187, 190 (213 SE2d 550) (1975); overruled on other grounds, *Ga. Power Co. v. Busbin,* 242 Ga. 612, 615 (250 SE2d 442) (1978). Even though a person's employment contract is at will, he has a valuable contract right which may not be unlawfully interfered with by a third person. *Ott v. Gandy,* 66 Ga. App. 684 (1) (19 SE2d 180) (1942); *Ga. Power Co. v. Busbin,* supra, at 613.

Jones may state his claim of malicious interference with his employment against Local 926 and Archer, as the third parties in this case. However, even where Jones has alleged a conspiracy against Georgia Power, his cause of action must fail. Georgia Power as employer could terminate Jones at will and cannot be held liable for a conspiracy to do that which it legally was entitled to do. *Hill v. Delta Air Lines,* 143 Ga. App. 103, 104 (237 SE2d 597) (1977); *Ga. Power Co. v. Busbin,* supra, at 614. Dismissal of Georgia Power by the trial court was not error regardless of the preemption issue.

(b) The trial court in its order recognized that this court has decided two cases directly on point regarding preemption by the NLRB of a state case involving tortious interference with employment. In *Sheet Metal Workers &c. Assn. v. Carter,* 133 Ga. App. 872 (212 SE2d 645) (1975), cert. den. 423 U.S. 1078, an employee brought suit against a union alleging, inter alia, that the union had caused him to be denied employment in the sheet metal industry. This court affirmed a denial of the union's motion to dismiss based on preemption by the NLRA. This case was again appealed after a jury trial and reversed on the question of service, *Sheet Metal Workers &c. Assn. v. Carter,* 241 Ga. 220 (244 SE2d 860) (1978). However, the principles of law regarding preemption were not overruled and we view them as applicable here.

In *Carter* this court recognized the rule of preemption set forth in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 (79 SC 773, 3 LE2d 775) (1959): "'[W]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the Federal courts must defer to the exclusive competence of the National Labor Board if the danger of State interference with National policy is to be averted.'" *Sheet Metal Workers &c. Assn. v. Carter,* supra, at 874. However,

Judge Clark goes on to state that there are situations in which state court jurisdiction is appropriate and has been recognized by the Supreme Court of the United States where conduct touches interests " 'deeply rooted in local feeling and responsibility.' " Id., at 874.

More recently the Supreme Court of the United States has discussed the Garmon rule and recognized that it has not been applied in a number of cases where "the Court has allowed a State to enforce certain laws of general applicability even though aspects of the challenged conduct were arguably prohibited by § 8 of the NLRA. Thus . . . the Court has upheld state-court jurisdiction over conduct that touches 'interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.' [Cits.]" Sears, Roebuck & Co. v. Carpenters, 436 U.S. 180, 194-195 (98 SC 1745, 56 LE2d 209) (1978).

In *International Brotherhood v. Briscoe,* 143 Ga. App. 417 (239 SE2d 38) (1977), this court reviewed a fact situation identical to that presented in the instant case, i.e., an action by a non-union person whose employment was terminated allegedly because the union had caused the employer to be intimidated and coerced into breaking its contract of employment with him. The *Briscoe* court, relying on *Carter,* held that the cause was *not* within the exclusive jurisdiction of the NLRB under Garmon.

This court also held in *Briscoe* that Farmer v. Carpenters, 430 U.S. 290 (97 SC 1056, 51 LE2d 338) (1977), did not require a different result where "[t]here is little risk here that the state cause of action would interfere with the effective administration of national labor policy . . . 'Viewed . . . in light of the discrete concerns of the federal scheme and the state tort law, that potential for interference [with the regulatory jurisdiction of the Labor Board] is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens.' Farmer (97 SC at 1065, 51 LE2d at 352)." *Briscoe,* supra, at 422.

2. The trial court in the instant case declined to follow *Carter* and *Briscoe* because in neither case had an unfair labor practice charge been filed with the NLRB regarding the allegedly tortious activity. We disagree with the trial court that such a difference distinguishes the instant case from *Carter* and *Briscoe,* as to require a different result.

(a) Jones filed his charge against Local 926 and Archer on June 28, 1978 alleging that the union "caused and procured" his discharge and "thereby coerced the employer . . . in the selection of its supervisors and bargaining representative, because said individual had not been a member in good standing of said labor organization."

The charge was alleged as an unfair labor practice within the meaning of § 8 (b) of the NLRA which states "[i]t shall be an unfair labor practice for a labor organization or its agents — (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 . . . or (B) an *employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances.* (Emphasis supplied.) 29 U.S.C. § 158 (b) (1) (A) and (B).

Upon investigation and consideration, the regional director of the NLRB refused to issue a complaint regarding the charges filed. In a letter to Jones, the regional director stated: "the evidence was insufficient to establish that the Union caused your discharged (sic) or that it restrained or coerced the Employer in the selection of its representative for the purpose of collective bargaining."

Jones did not appeal this decision. The question this court is asked to decide is whether or not such a statement by the regional director must necessarily end the inquiry into Jones' allegations against the Union. A ruling that the union was found *not* to have "coerced" an employer in the selection of the employer's representative under the Act does not preclude this suit based on malicious *interference* with an employment contract. The two cases while arising from the same conduct are dissimilar enough to present separate and distinct issues for adjudication.

Appellee Union contends that Sears Roebuck & Co. v. Carpenters, supra, requires that the trial court refrain from exercising jurisdiction in this case where the test is "whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been . . . presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the Garmon doctrine was designed to avoid." Sears, supra, at p. 197.

However, the court in Sears goes on to distinguish between the controversy which might have been presented to the Board and that which was presented to the state court. The federal and state issues were "completely unrelated" to the simple question of state law involved. Similarly, the federal issue here is whether the Union has committed an unfair labor practice by coercing an employer in the selection of the employer's representatives for purposes of collective bargaining. In the state action, Jones alleges that the Union interfered with his contract of employment with Georgia Power and suffered damage thereby. Permitting the state court to adjudicate Jones' tort claim would create no realistic risk of a conflict with the

Labor Board's determination that there had been no unfair labor practices under § 8 (b) (1) (B). Id., at 198.

Judge Clark's reasoning in *Carter* is applicable here even where a charge had already been filed and rejected by the NLRB. "We recognize the instant case may be within the jurisdiction of the National Labor Relations Board even though it does not involve an employer as a party. Nevertheless, the state's concern 'to protect the rights of its citizens' requires us to acknowledge that the plaintiff here would be deprived of certain legal rights in the event we ruled the state court lacked jurisdiction. We refer to the fact that the power of the NLRB is limited by the provisions of the federal statute. When the board finds either a union or an employer guilty of an unfair labor practice it has the power to enter a cease and desist order '. . . and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: *Provided,* that where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him . . .' 29 U.S.C. § 160 (c). Although the appellant Unions argue that this remedy would enable the NLRB to make the plaintiff whole, it is obvious that it does not include power to award him exemplary damages or attorney fees. Under Georgia law a plaintiff has the right upon presentation of proper proof satisfactory to the court and jury to receive punitive damages (Code § 105-2002). Reasonable attorney fees also may be awarded in certain instances. Code § 20-1404; *Traders Ins. Co. v. Mann,* 118 Ga. 381, 384 (45 SE 426); *Roberts Pest Control v. McDonald,* 132 Ga. App. 257, 260 (4) (208 SE2d 13).

"As is observed in the Linn [Linn v. United Plant Guard Workers, 383 U.S. 53 (86 SC 657, 15 LE2d 582) (1966)] case at page 63: 'The Board can award no damages, impose no penalty, or give any other relief to the defamed individual. On the contrary, state remedies have been designed to compensate the victim and enable him to vindicate his reputation. The board's lack of concern with the "personal" injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for pre-emption.' The court's observation dealt with a libel action but those views are appropriate to the instant case. Moreover, this special situation as to punitive damages was recognized in International Union U.A.W. v. Russell, 356 U.S. 634 (78 SC 932, 2 LE2d 1030). There the court noted that 'Congress did not establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct. United Workers v. Laburnum Corp., 347 U.S. 656, 666-667.' Id. p. 643.

It ruled that plaintiff was entitled to maintain his action in the state jurisdiction stating that '. . . an employee's right to recover, in the state courts, *all* damages caused him by this kind of tortious conduct cannot fairly be said to be preempted without a clearer declaration of congressional policy than we find here . . .' Id. p. 646." *Carter,* supra, at p. 875-876.

Appellee cites *Hudgens v. Local 315,* 133 Ga. App. 329, 334 (210 SE2d 821) (1974) to support its argument that the instant case is preempted because a charge had been filed with the NLRB. We find *Hudgens* distinguishable from the instant case. In *Hudgens* this court held that "as this case involved the question of peaceful picketing it was exclusively within the federal jurisdiction," and "the N.L.R.B. had there ruled that the picketing here complained of was a protected activity under the federal Act and had also held that the threat to arrest the pickets for criminal trespass was an unfair labor practice, we find this controversy does not come within either of the two [Garmon] exceptions [i.e., where the activity involved is a peripheral concern of the federal Act or where the regulated conduct touched interests deeply rooted in local feeling or responsibility]." Id., at p. 334-335. In the instant case we do not have "protected" activity, nor do we have a finding by the Board of an unfair labor practice. Rather, we have an interest deeply rooted in local feeling or responsibility, the power of a state to protect the rights of its citizens. *International Brotherhood v. Briscoe,* supra, at p. 423. As Judge Clark pointed out in *Hudgens,* ". . . our ruling in no way limits the right of state courts to handle civil damage suits which may arise from labor disputes." *Hudgens,* supra, at p. 335.

(b) As pointed out in *Briscoe,* there is an additional reason the state court is not preempted by the NLRA. Jones was hired as equipment maintenance superintendent, a supervisory position. In Iron Workers v. Perko, 373 U. S. 701 (83 SC 1429, 10 LE2d 646) (1963), the Supreme Court held that "if a union forces an employer to discharge a supervisor, such conduct may well violate § 8 (b) (1) (B) because it coerces the 'employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances.' " Id., at 708. However, Perko involved a union member classified as a foreman, whose status as an "employee" fluctuated and who may have had sufficient responsibilities with regard to grievances to bring § 8 (b) (1) (B) into play. Such a question would be determined by the Board. In the instant case the regional director has already determined and indicated in his letter that there had been no coercion of the employer in the selection of its representative for the purpose of collective bargaining under § 8 (b) (1) (B).

With regard to an unfair labor practice charge under § 8 (b) (1)

(A), " 'It has long been recognized that supervisors are not entitled to the protection afforded "ordinary employees" under the Act, and that "as to supervisors there can be no such thing as a discriminatory discharge or an unfair labor practice." [Cits.]' " *International Brotherhood v. Briscoe,* supra, p. 425.

The trial court erred in granting the Union's motion to dismiss for lack of jurisdiction.

3. Appellant contends that the trial court erred in dismissing his complaint where there is an apparent violation of the Georgia right to work laws. It is undisputed that Jones was hired as a supervisor by the employer here. The Supreme Court of the United States has held that supervisors are not accorded the status of "employees" under state law for purposes of right to work statutes since such an application of state law would flout the national policy against compulsion upon employers from either federal or state agencies to treat supervisors as employees. Beasley v. Food Fair of N. C., 416 U.S. 653 (94 SC 2023, 40 LE2d 443) (1974). The trial court was correct in not considering appellant's claim based on a violation of the state right to work statutes.

*Judgment affirmed in part; reversed in part. Shulman, P. J., and Birdsong, J., concur.*

DECIDED SEPTEMBER 9, 1981 —
REHEARING DENIED SEPTEMBER 25, 1981 —

*Eugene Novy, Robert F. Gore, Penelope W. Rumsey, Michael C. Murphy,* for appellant.

*James T. Langford, Charles W. Whitney, Harris Jacobs, Melvin Radowitz, Joseph Jacobs,* for appellees.