18787. BEMAN *et al. v.* STEMBRIDGE.

Submitted November 8, 1954—Decided January 10, 1955.

*W. S. Edwards, George Jackson, Whitman & Whitman, R. C. Whitman, Jr.,* for plaintiffs in error.

*Milton F. Gardner, D. D. Veal,* contra.

ALMAND, Justice. Only the second headnote requires elaboration. "Where there is no conflict in the evidence, and that introduced, with all reasonable deductions or inferences there-

from, shall demand a particular verdict, the court may direct the jury to find for the party entitled thereto." Code § 110-104. The mere fact that there are conflicts in the testimony does not render the direction of a verdict in favor of a party erroneous, when it appears that the conflicts are immaterial, and that, giving to the opposite party the benefit of the most favorable view of the evidence as a whole and of all legitimate inferences therefrom, the verdict against him is demanded. *Skinner* v. *Braswell*, 126 *Ga.* 761 (2) (55 S. E. 914). .

The evidence of the subscribing witnesses was sufficient to make out a prima facie case of testamentary capacity upon the part of the testator to make a valid will. The trial court, in a written opinion denying the motion for new trial, said: "Although the evidence was insufficient to overcome the testimony of the subscribing witnesses, as applied to ordinary cases of probate of wills, nevertheless, under the rules applicable to cases of this kind where the law requires close scrutiny of the will and refusal of probate upon the slightest evidence of aberration of intellect, the evidence was sufficient to raise an issue to be determined by the jury and to uphold their verdict refusing probate."

Code § 113-106, declaring that a testator may bequeath his entire estate to strangers, to the exclusion of his wife or children, but in such case the will should be closely scrutinized, is not applicable where, as here, the testator had no children, and approximately two years after separating from his wife, executed a will which provided: "I am informed that it will be necessary to give my legal wife a certain share of my estate and I am sorry that this is true. I am not able to avoid the thought that if she had brought to our marriage the love, the enthusiasm, and the willingness to work that I felt; our answer would have been different. After mature consideration, it is my unqualified belief that she married me for what she hoped to get out of the marriage in a financial way. I give and bequeath to my legal wife the minimum that the law requires. One dollar."

The wife having been bequeathed one dollar, it cannot be held that she was altogether excluded in the will of the testator, and in *Smith* v. *Davis*, 203 *Ga.* 175 (2) (45 S. E. 2d 609), it was held: "The provisions of § 113-106 of the Code are applicable only

when the wife, there being no child or children, is altogether excluded in the will of her husband." The present case is distinguishable by its facts from *Bowman* v. *Bowman*, 205 *Ga.* 796 (3) (55 S. E. 2d 298), where the testator expressly excluded his wife from participating in his will.

It is well-settled law that a lunatic during a lucid interval may make a will. Code § 113-204. Even an incapacity to contract is not inconsistent with the capacity to make a will, as it takes a greater quantum or higher degree of mentality to make a contract than it does to make a will. Code § 113-202; *Wood* v. *Lane,* 102 *Ga.* 199, 201 (29 S. E. 180). The weak have the same rights as the strong-minded to dispose of their property by will, and anything less than a total absence of mind does not destroy that capacity. If the testator has sufficient intellect to enable him to have a rational desire as to the disposition of his property, this is sufficient. And the condition of the testator's mind at the time of the execution of the will determines whether he can make a valid will. *Griffin* v. *Barrett,* 183 *Ga.* 152, 164 (187 S. E. 828).

"As tending to illustrate the mental condition at that time evidence of such condition at other times may be received; but where it is sought to establish testamentary incapacity by such evidence, it does not controvert the positive testimony of the subscribing witnesses unless it would be proof of testamentary incapacity at the time the will was signed." *Fehn* v. *Shaw,* 199 *Ga.* 747, 754 (35 S. E. 2d 253); *Anderson* v. *Anderson,* 210 *Ga.* 464, 472 (80 S. E. 2d 807).

While there was much evidence in the present case tending to show that the testator was a highly eccentric person, the only medical expert testified: The last time he saw the testator professionally was in 1942. The testator operated his business while a patient. He was not suffering from monomania about his money but had delusional ideas on other subjects, particularly the idea that someone was trying to harm him. He was in a fear state which is more or less a temporary type of reaction.

The caveatrix testified: He had delusional ideas that members of his family were trying to poison him to get his money, but he left the residue of his estate to his sister Thelma. Caveatrix married the testator in August, 1947, and they separated in July,

1949, approximately a year and a half before the will was executed. A divorce suit caveatrix filed against the testator was pending at the time of his death. She admitted on cross-examination that she was not sure she talked with testator on the day the will was signed, and that she was not in Macon where the will was executed on that day.

The caveatrix assumed the burden of proving lack of testamentary capacity. The testimony of the subscribing witnesses, who gave their opinion as to the mental condition of the testator on the day the will was executed, that he did have mental capacity to execute the will, was not overcome by the non-expert witnesses testifying on behalf of the caveatrix, whose opinions were based upon facts from which no legal conclusion could be drawn that the testator did not have mental capacity to execute the will. All that their testimony amounted to was that the testator was highly eccentric and that he had delusional ideas that people were trying to harm him. The uncontroverted evidence showed that the testator not only conducted his brokerage business while a patient in Allen's Institution, but that he continued to conduct it until his death approximately two years after execution of the will.

Under section 2 of the amendment to the Rules of Practice and Procedure, adopted by this court on November 23, 1953 (Ga. L. 1953, Nov.-Dec. Sess., pp. 440, 444; Code, Ann. Supp., § 110-113), where a motion for a directed verdict has been denied, the party moving for a directed verdict may within 30 days after the reception of the verdict move to have the verdict and any judgment rendered thereon set aside and have judgment entered in accordance with his motion for a directed verdict. Where his motion is denied, the losing party "may take specific exception in the final bill of exceptions, and if the exception is sustained by the appellate court, direction shall be given that verdict be entered in accordance with the motion."

The evidence in the instant case being insufficient to authorize a verdict in favor of the caveatrix on any issue raised in the caveat, but demanding a verdict in favor of the propounders, the trial court should have granted the motion of the propounders to set aside the verdict and judgment in favor of the caveatrix and entered a judgment in accordance with the motion for a

directed verdict. Direction is accordingly given: that, upon the return of the remittitur to the trial court, a verdict and judgment be entered in favor of the propounders.

The trial court having erred in not sustaining the propounders' motion to enter a judgment notwithstanding the verdict, the judgment denying the motion for a new trial was nugatory. Direction is given that the order overruling the motion for a new trial be set aside.

*Judgment reversed with directions. All the Justices concur, except Candler, J., who dissents, and Mobley, J., who is disqualified.*