25492. JOINER, by Next Friend v. JOINER.

Argued October 15, 1969—Decided November 6, 1969.

*Fulcher, Fulcher, Hagler, Harper & Reed, W. M. Fulcher,* for appellant.

*Julian P. Cheney, Sharpe, Sharpe, Hartley & Newton, T. Malone Sharpe,* for appellee.

NICHOLS, Justice. Mrs. J. E. Joiner, Jr., as next friend for her husband, J. E. Joiner, Jr., filed a suit seeking the cancellation of a deed signed by her husband conveying land to Gary Joiner. It was alleged that J. E. Joiner, Jr. was mentally incompetent at the time the deed was executed and totally incapable of executing it. On the trial of the issue thus made, the jury returned a verdict for the defendant. The plaintiff's amended motion for new trial was overruled and the present appeal filed.

■ A motion to dismiss the appeal was filed in this court because the notice of appeal states that the plaintiff "appeals . . . from the judgment in favor of the defendant entered in this action on September 18, 1968," when in fact the judgment was not entered until September 20, 1968, and no appealable judgment of September 18, 1968, appears in the record.

The judgment was signed and dated by the trial judge on September 18, 1968, but not filed in the office of the clerk of the superior court until September 20, 1968. Under the Act of 1968 (Ga. L. 1968, pp. 1072, 1074; *Code Ann.* § 6-809 (d)), it is apparent what judgment the notice of appeal refers to and the motion to dismiss is overruled. Compare *Jones v. State,* 225 Ga. 114 (166 SE2d 350), applying such Act to an enumeration of error.

■ During the trial of the case the defendant testified: "Bo [referring to the plaintiff who at the time of the trial had been declared incompetent] had told me he owed the Bank of Millen for his house." This testimony had reference to the circumstances surrounding the conveyance sought to be set aside. The plaintiff objected to such testimony as incompetent under the provisions of *Code* § 38-1603 which precludes a party from testifying as to conversations with an opposite party who is insane. At this point, the jury was excluded and counsel for the defendant proceeded to perfect the record

as to the testimony of such witness. The court heard argument of counsel and ruled out such evidence. Upon the return of the jury to the courtroom, no action was taken to inform the jury that such testimony was ruled out on objection.

Under the above circumstances, the failure of the trial court to inform the jury of its ruling was the same, insofar as its effect on the jury, as no ruling on the plaintiff's objection. See *Lynn v. State,* 140 Ga. 387 (8) (79 SE 29).

Thus, while the court sustained the plaintiff's objection, by not informing the jury of the ruling, it admitted such testimony into evidence. Therefore, the ruling complained of in the second enumeration was error. This type of case is distinguishable from cases where a ruling is made which informs the jury that evidence has been excluded but the party feels that additional instructions should be given. The ruling complained of in the third enumeration of error is in the latter category.

■ Shortly after the deed in question was executed, a petition for separate maintenance was filed against the grantor by his wife. On cross examination by the grantee's counsel she was asked if she had asked for a guardian to be appointed for the grantee when she filed such action against him, to which she replied "No." On redirect examination she was asked if she had followed her attorney's advice in not asking that a guardian be appointed. The grantee's counsel objected on the ground that such question called upon her to testify in regard to what someone else told her which would constitute hearsay. The fourth enumeration of error complains of the exclusion of such evidence. The record shows that she would have answered such question in the affirmative.

Under the provisions of *Code* § 38-302 the testimony was not hearsay but original testimony to explain conduct. Compare *Moss v. Moss,* 147 Ga. 311 (3) (93 SE 875).

■ The fifth and seventh enumerations of error complain of excerpts from the court's charge which relate to the burden of proof and which correctly placed the burden of proof on the plaintiff to show that grantor was insane at the time the deed was executed. Such charges were applicable under the evidence

which tended to show that the grantor suffered from temporary insanity at various times before and after the actual execution of the deed.

Thus it was not error to give such instructions to the jury. However, the eighth enumeration of error, which complains of the failure to charge on the effect of proving permanent or habitual insanity prior to the time the deed was signed being to place the burden on the defendant of proving the grantor to be sane at the time the deed was executed, shows reversible error since there was evidence adduced tending to show that the grantor had been insane continuously for some years prior to the time the deed was executed. See *Dicken v. Johnson*, 7 Ga. 484; *Martin v. Martin*, 185 Ga. 349, 352 (195 SE 159).

■ The sixth enumeration of error complains of an excerpt from the court's charge instructing the jury "that mere sickness of mind resulting from old age, or feebleness of health, not amounting to imbecility, is not sufficient to warrant a jury in setting aside a deed, in the absence of fraud or undue influence." This excerpt from the court's charge, while stating a correct principle of law, was erroneous in that there was no evidence of the grantor's physical condition, his age or that any mental impairment which he suffered resulted from "old age or feebleness of health."

■ Enumerations of error numbered 9 and 10 complain of excerpts from the trial court's instruction to the jury on the question of mental competency to execute a deed.

Language strikingly similar to that complained of has been approved by this court in prior decided cases, yet some of such language when taken out of context or without an explanation could mislead a jury. Thus, assuming but not deciding that the language complained of in these two enumerations of error would not in itself require another trial of the case, yet since the case must again be tried, it is deemed appropriate to deal generally with the subject of the mental competency necessary to execute a deed.

*Code* § 113-202 provides in part: "An incapacity to contract may coexist with a capacity to make a will . . ." In *Beman v. Stembridge*, 211 Ga. 274, 282 (85 SE2d 434) it was said:

"It is well-settled law that a lunatic during a lucid interval may make a will. Code § 113-204. Even an incapacity to contract is not inconsistent with the capacity to make a will, as it takes a greater quantum or higher degree of mentality to make a contract than it does to make a will. Code § 113-202; *Wood v. Lane*, 102 Ga. 199, 201 (29 SE 180). The weak have the same rights as the strong-minded to dispose of their property by will, and anything less than a total absence of mind does not destroy that capacity. If the testator has sufficient intellect to enable him to have a rational desire as to the disposition of his property, this is sufficient. And the condition of the testator's mind at the time of the execution of the will determines whether he can make a valid will. *Griffin v. Barrett*, 183 Ga. 152, 164 (187 SE 828)."

In *Pace v. Pace*, 220 Ga. 66 (4) (137 SE2d 28), the following was quoted from the decision in *Barlow v. Strange*, 120 Ga. 1015, 1017 (48 SE 344): "A person is insane when he or she is not possessed of mind and reason equal to a full and clear understanding of the nature and consequence of his or her act in making the contract." It was then held: "For one who has not strength of mind and reason equal to a clear and full understanding of his act in making a contract is one who is afflicted with an entire loss of understanding." Numerous cases were then cited in *Pace v. Pace*, supra, showing like rulings.

In *Maddox v. Simmons*, 31 Ga. 512, 527, it was said "to establish incapacity in a grantor, he must be shown to have been, at the time, non compos mentis, in the legal acceptation of that term; which means, not a partial, but an entire, loss of understanding."

The decision in *Summer v. Boyd*, 208 Ga. 207 (66 SE2d 51), with one Justice concurring in the judgment only, repeated the holdings above shown and stated, as had other decisions, that such rules were not in conflict but that each stated the same rule. After ruling that the trial court erred in refusing to give in charge a request in the language requested, the following was said: "Were it an open question at this time, we would hesitate to give approval to the requested charge because of the likelihood that it might lead the jury into a misunderstanding of the

rule. It would seem safer, if added to the rule as stated in the request to charge, were an explanation of precisely what is meant by a full and clear understanding of the nature and consequences of his act. The law contemplates no more than that he understand that he is signing a deed and that it divests him of title. It would require a higher degree of intelligence than is necessary under the law for the grantor to clearly and fully understand that the consequences of his act would be to render him insolvent, to displease his family, or render him dependent. It would therefore seem to be the safer and fairer practice to thus explain the rule when given in the charge, to avoid the destruction of contracts and deeds that are, under the rule, perfectly valid." P. 210.

Such language was not necessary to a decision in the case, but of more importance is the question of whether the language correctly states the law on such subject.

As has been pointed out above, in order to execute a will it is necessary, as a minimum, that the testator have a rational desire as to the disposition of his property. It takes a greater intellect to execute a deed! Is the mere knowledge that it is a deed divesting the grantor of title show a greater intellect than "a rational desire as to the disposition of property?" To ask the question is to answer it. Can it be said that one who does not know that his act will make him insolvent, displease his family or render him dependent, can know the consequences of his act? This is not to say that a person cannot voluntarily render himself insolvent, displease his family or render himself dependent, but not to know such fact is a different thing. Nor, of course, is any person assured that any transaction will not render him or her insolvent or dependent because of bad judgment, adverse changes in the market place, etc. Thus, while the fact that a person did or did not become insolvent, displease his family or become dependent as the result of signing a deed is not evidence of mental capacity, yet if his or her mental capacity was so impaired that he or she did not know at the time whether such would or could be the case, then such person would not have the capacity to make a will much less the capacity to execute a deed. Accordingly, the language quoted

above from the decision in *Summer v. Boyd*, 208 Ga. 207, 210, supra, is disapproved.

■ The first enumeration of error complains that the verdict was not supported by the evidence. Suffice it to say that the evidence was in sharp conflict and did not demand a verdict for either the plaintiff or the defendant.

*Judgment reversed. All the Justices concur.*