## S05A0548. WILSON et al. v. LANE.
(614 SE2d 88)

FLETCHER, Chief Justice.

After Executrix Katherine Lane offered Jewel Jones Greer's 1997 last will and testament for probate, Floyd Wilson filed a caveat, challenging Greer's testamentary capacity. A Jasper County Superior Court jury found that Greer lacked testamentary capacity at the time she executed her will, but the trial court granted Lane's motion for judgment notwithstanding the verdict. Wilson appeals. Because we agree that there was no evidence to show that Greer lacked testamentary capacity, we affirm.

A person is mentally capable to make a will if she "has sufficient intellect to enable [her] to have a decided and rational desire as to the disposition of [her] property. . . ."[1] In this case, the propounders introduced evidence that the will in question distributed Greer's property equally to 17 beneficiaries, 16 of whom are blood-relatives to Greer. The only non-relative beneficiary is Katherine Lane, who spent much of her time caring for Greer before her death in 2000. The drafting attorney testified that in his opinion, at the time the 1997 will was signed, Greer was mentally competent, and that she emphatically selected every beneficiary named in the will. Numerous other friends and acquaintances also testified that Greer had a clear mind at the time the will was signed.

Thus, the propounders established a presumption that Greer possessed testamentary capacity. The caveators, however, never presented any evidence whatsoever showing that Greer was incapable of forming a decided and rational desire as to the disposition of her property,[2] even when the evidence is examined in the light most favorable to their case.

The caveators challenged Greer's capacity by showing that she was eccentric, aged, and peculiar in the last years of her life. They presented testimony that she had an irrational fear of flooding in her house, that she had trouble dressing and bathing herself, and that she unnecessarily called the fire department to report a non-existent fire. But "[t]he law does not withhold from the aged, the feeble, the weak-minded, the capricious, the notionate, the right to make a will, provided such person has a decided and rational desire as to the disposition of his property."[3] Although perhaps persuasive to a jury,

---

[1] *Slaughter v. Heath*, 127 Ga. 747, 747 (57 SE 69) (1906); OCGA § 53-4-11 (a) ("testamentary capacity exists when the testator has a decided and rational desire as to the disposition of property"); see also *Morris v. Stokes*, 21 Ga. 552, 571 (1857) (wisdom of testator irrelevant so long as she is not "totally deprived of reason").

[2] OCGA § 53-4-11 (a).

[3] *Hill v. Deal*, 185 Ga. 42, 46 (193 SE 858) (1937).

"eccentric habits and absurd beliefs do not establish testamentary incapacity."[4] All that is required to sustain the will is proof that Greer was capable of forming a certain rational desire with respect to the disposition of her assets.

In addition to Greer's eccentric habits, the caveators also introduced evidence of a guardianship petition filed for Greer a few months after the will was executed, the testimony of an expert witness, and a letter written by Greer's physician. None of that evidence, however, was sufficient to deprive Greer of her right to make a valid will, as none of it showed that she was incapable of forming a rational desire as to the disposition of her property.

The expert admitted that he had never examined Greer, and that his testimony was based solely on a cursory review of some of Greer's medical files. Further, he was equivocal in his testimony, stating only that "*it appears* that she was in some form of the early to middle stages of a dementia of the Alzheimer's type." Regardless of the stigma associated with the term "Alzheimer's," however, that testimony does not show how Greer would have been unable to form a rational desire regarding the disposition of her assets. Indeed, the expert offered no explanation of how her supposed condition would affect her competency to make a valid will.

The testimony of Greer's physician also failed to show how she lacked testamentary capacity. In 1996, the physician wrote a letter stating that Greer "was legally blind and suffered from senile dementia. . . ." But the doctor testified that he was "not sure whether she had senile dementia at the time or not, even though I wrote that." He stated further that he only wrote the letter to try and assist Greer in obtaining help with her telephone bill because she had been having trouble with her eyes. In any event, a vague reference to "senile dementia" cannot eliminate testamentary capacity. If it could, it would undermine societal confidence in the validity and sanctity of our testamentary system.

Finally, as the dissent points out, Lane filed a guardianship petition in 1998, after the will was executed, proclaiming that Greer was no longer capable of managing her own affairs alone. According to the testimony, however, the petition was filed solely in order to satisfy the Department of Family and Children Services' concerns regarding Greer's ability to continue living on her own, and thus to allow Greer to remain in her home. Even if Greer's inability to live alone existed at the time the will was executed, which was not proven

---

[4] Sarajane Love, Wills and Administration in Georgia, § 45, at 82 (5th ed. 1988); see also OCGA § 53-4-11 (d) ("[n]either advancing age nor weakness of intellect nor eccentricity of habit or thought is inconsistent with the capacity to make a will").

by any evidence, that fact bears no relation to her ability to form a rational desire regarding the disposition of her assets.

In *Brumbelow v. Hopkins*, the caveators challenged a will by showing that the testator was of unsound mind, including a physician's testimony that a few days before the will's execution, the testator's "mind was not good."[5] But this Court ruled that the evidence was insufficient to deprive the testator of the "valuable right" to make a will, as allowing it to do so would undermine "certainty and uniformity in the administration of justice."[6] Accordingly, this Court ruled that the jury verdict to the contrary should have been set aside.[7]

Similarly, in this case, no testimony, expert or otherwise, was offered to establish that at the time the will was executed, Greer suffered from a form of dementia sufficient in form or extent to render her unable to form a decided and rational desire regarding the disposition of her assets. Notwithstanding the dissent's attempt to piece together "the totality of the evidence," none of the evidence, either alone or in combination, provided any proof that Greer lacked testamentary capacity, as that term is defined in this State. At most, there was evidence that Greer was an eccentric woman whose mental health declined toward the end of her life. Accordingly, the evidence demanded a verdict upholding the validity of the will, and the trial court was correct to reverse the jury's contrary verdict.[8]

*Judgment affirmed. All the Justices concur, except Sears, P. J., Carley and Hines, JJ., who dissent.*

CARLEY, Justice, dissenting.

I agree that the evidence in this case would have authorized a finding that Ms. Greer possessed the requisite testamentary capacity when she executed a will in September of 1997. However, the jury found that she lacked such capacity, and we must decide whether the evidence supports that finding. I submit that, when the evidence is construed most strongly in support of the jury's verdict in favor of the

---

[5] 197 Ga. 247, 250 (2) (29 SE2d 42) (1944).

[6] Id. at 255-256.

[7] Id. at 256; see also *Beman v. Stembridge*, 211 Ga. 274 (85 SE2d 434) (1955) (error to deny j.n.o.v. where evidence showed that testator suffered from paranoid delusions, because that is insufficient to deprive the testator of the right to make a will); *Anderson v. Anderson*, 210 Ga. 464, 467-473 (80 SE2d 807) (1954) (directed verdict properly granted where evidence of weak and vacillating mind was insufficient to raise a jury issue with respect to testator's capacity); *Griffin v. Barrett*, 183 Ga. 152, 154-165 (187 SE 828) (1936) (viewing evidence in light most favorable to caveators, evidence of senility insufficient to deprive testator of capacity where evidence failed to show he was "totally bereft of reason").

[8] See *Pendley v. Pendley*, 251 Ga. 30, 30 (302 SE2d 554) (1983) (directed verdict or j.n.o.v. properly granted only where all "the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict . . .").

Caveators, it authorized the finding that Ms. Greer did not have sufficient intellect to enable her to make a decided and rational determination concerning the disposition of her estate. Therefore, I dissent to the affirmance of the trial court's grant of the Propounder's motion for judgment notwithstanding the verdict.

When considering the grant of a motion for judgment n.o.v., "[t]he appellate standard of review . . . is whether the evidence, with all reasonable deductions therefrom, *demanded* a verdict contrary to that returned by the factfinder. [Cits.]" (Emphasis supplied.) *Bagley v. Robertson*, 265 Ga. 144, 145 (454 SE2d 478) (1995).

> A judgment n.o.v. . . . is authorized when there can be only one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is . . . error to [grant] the motion. [Cit.]

*Galardi v. Steele-Inman*, 266 Ga. App. 515, 516 (1) (597 SE2d 571) (2004). The fact that Ms. Greer was elderly, sickly, eccentric or forgetful does not authorize a finding that she lacked the necessary testamentary capacity to make a valid will. See *Irvin v. Askew*, 241 Ga. 565, 566 (1) (246 SE2d 682) (1978); *Brumbelow v. Hopkins*, 197 Ga. 247, 255 (4) (29 SE2d 42) (1944). However, evidence that, as the result of her age or health, her mental condition had deteriorated to the extent that she was unable to form a decided and rational desire regarding the disposition of her property will authorize a finding that the instrument she executed is invalid. See *Stanley v. Stanley*, 277 Ga. 798 (596 SE2d 138) (2004) (will invalid where testator suffered from "severe dementia"); *Horton v. Horton*, 268 Ga. 846 (1) (492 SE2d 872) (1997) (will invalid where testatrix suffered from "underlying dementia").

"Evidence of incapacity at a reasonable time prior to and subsequent to a will's execution creates an issue of fact as to capacity at the time of execution. [Cit.]" *Sullivan v. Sullivan*, 273 Ga. 130, 131 (1) (539 SE2d 120) (2000). Because the jury found that Ms. Greer lacked testamentary capacity, "[o]nly the testimony favorable to [the] Caveator[s] need be considered, because the sole question before us is whether there is sufficient evidence to sustain the jury's verdict. [Cit.]" *Horton v. Horton*, supra at 847 (1). Here, the Caveators presented expert medical opinion testimony showing that, at the time Ms. Greer executed the will, "she was in some form of the early to middle stages of a dementia of the Alzheimer's type." A year earlier, her own physician had expressed his belief that she exhibited "senile dementia . . . ." In January of 1998, a petition was filed which alleged

that Ms. Greer was an "incapacitated" adult and sought the appointment of a guardian. This petition for guardianship was supported by the affidavit of her doctor, who stated his opinion that she had "dementia — Alzheimer's type," that she suffered from "poor memory, poor judgment, [was] difficult to reason with," and that she was "incapacitated on a permanent basis." The physician's affidavit also indicated that Ms. Greer was in present need of a guardian for both her person and her property. With regard to the guardianship of her person, the doctor noted that she "lacks sufficient understanding or capacity to make significant responsible decisions concerning . . . her person or is incapable of communicating such decisions." As for the guardianship of her property, the physician indicated that she was "incapable of managing . . . her estate, and [her] property . . . will be wasted or dissipated unless proper management is provided . . . ." The Caveator's expert testified that, if, as Ms. Greer's own doctor expressed in his affidavit, she was

> having profound problems in one month where [she] would be considered incapacitated or needing a guardian then you would be able to go backwards for a number of months, probably up to a year or two, at least, and say that [she] was having some sort of problem with [her] thinking.

It was only four months between the time she signed the instrument tendered for admission into probate and the petition alleging that she was "permanently incapacitated" due to "dementia" based upon Alzheimer's disease.

In addition to the expert medical opinion evidence showing that Ms. Greer suffered from dementia attributable to Alzheimer's disease shortly before, during and shortly after the time she executed the will, the Caveators introduced evidence which was indicative of the extent to which her mental acuity had been impaired. She had an irrational fear that her home was being flooded. She even refused to get into the bathtub, and insisted on sponge baths. Visitors to her home

> couldn't flush the commode, couldn't really run the water in her kitchen sink . . . . [S]he had a phobia of water and when you went to [visit her] you dare not go in the commode, use the bathroom, you didn't cut on the water to get a drink of water or anything so you just had to sit.

There was additional evidence showing that in mid-December of 1997, only three months after executing the will, Ms. Greer was disoriented as to time and, believing that it was March, she was

unaware that Christmas was imminent. She did not know her own social security number. She had a list of first names and telephone numbers, but could not provide last names for any of those on that list. As the majority notes, she called the fire department to report a non-existent fire.

"[A] court must allow the issue of testamentary capacity to go to the jury when there is a genuine conflict in the evidence regarding the testator's state of mind. [Cit.]" *Murchison v. Smith*, 270 Ga. 169, 172 (508 SE2d 641) (1998). Here, the

> testimony introduced by [C]aveators covering a reasonable period of time before and after the time of the execution of the will constitute[s] a genuine conflict in the evidence regarding the state of the testat[rix's] mind on the date [s]he signed the will from which inferences could be drawn by a jury establishing a lack of the requisite mental capacity. [Cits.]

*Mallis v. Miltiades*, 241 Ga. 404, 405 (245 SE2d 655) (1978). While no single element of the Caveators' proof, standing alone, might otherwise be a sufficient predicate for invalidating Ms. Greer's will, when the totality of the evidence as to her mental condition during the relevant time period is considered, a jury certainly would be authorized to find that she suffered from serious dementia. If the evidence supports such a finding, then the jury was authorized to return a verdict holding that she lacked the requisite testamentary capacity. See *Stanley v. Stanley*, supra; *Horton v. Horton*, supra. Since the evidence supports the jury's verdict in favor of the Caveators, the trial court erred in granting the Propounder's motion for judgment n.o.v.

I am authorized to state that Presiding Justice Sears and Justice Hines join this dissent.

DECIDED JUNE 6, 2005 —
RECONSIDERATION DENIED JUNE 30, 2005.

*Moulton & Tarrer, Jeremy A. Moulton*, for appellants.
*Henry D. Frantz, Jr.*, for appellee.