**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 14, 2024**

# In the Court of Appeals of Georgia

A24A0111 CREAMER et al. v. MANLEY.

MCFADDEN, Presiding Judge.

This case is about a caveat to a will. The caveators appeal from a grant of summary judgment. The summary judgment order finds the evidence insufficient as a matter of law to sustain their either their contention that the testator lacked testamentary capacity or their contention that the beneficiary exercised undue influence over her. We agree and therefore affirm.

Willifred Thompson executed her Last Will and Testament in April 2019, naming her friend and caregiver, Mable Manley, as executrix and leaving the majority of her estate to Manley. Following Thompson's death, Manley petitioned to probate Thompson's will. Barbara Creamer and Gordon Lowe, second cousins of Thompson

who had not seen her in over 17 years, filed a caveat challenging the validity of the will due to lack of testamentary capacity and undue influence.

The probate court admitted the will to probate. Creamer and Lowe appealed to superior court, where the decision of the probate court was subject to de novo review. Manley moved the superior court for summary judgment as to the claims of lack of testamentary capacity and undue influence. The superior court granted the motion. Creamer and Lowe filed a notice of appeal. See OCGA § 5-6-35 (a) (1) (providing that [a]ppeals from decisions of the superior courts reviewing decisions of . . . lower courts" shall be taken under the discretionary appeal procedure but "that this provision shall not apply to decisions of . . . probate courts").

1. *Testamentary capacity*

"Testamentary capacity exists when the testator has a decided and rational desire as to the disposition of property." OCGA § 53-4-11 (a). "The controlling question is whether the testator had sufficient testamentary capacity *at the time of executing the will.*" *Ashford v. Van Horne*, 276 Ga. 636, 637 (1) (580 SE2d 201) (2003) (citation and punctuation omitted, emphasis in original). See also *Amerson v. Pahl*, 292

Ga. 79, 80 (1) (734 SE2d 399) (2012) ("testamentary capacity is assessed at the time the will is executed").

> On appeal from the grant of summary judgment, this [c]ourt construes the evidence in the light most favorable to the party opposing the motion to determine whether the record shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. In a will case, the propounder establishes a prima facie showing of testamentary capacity by offering testimony of the subscribing witnesses that the testator appeared to be of sound mind and that [s]he acted freely and voluntarily when [s]he executed [her] will. To avoid summary judgment, the caveator must then show that a genuine issue of material fact remains on the question of testamentary capacity.

*Prine v. Blanton*, 290 Ga. 307, 308 (1) (720 SE2d 600) (2012) (citations and punctuation omitted).

In this case, Manley offered affidavits of the subscribing witnesses showing Thompson's testamentary capacity at the time she executed her will. Thompson's attorney testified that he had known Thompson for many years; that she contacted his office to discuss the making of her will; that they had a preliminary meeting at which she clearly and rationally stated how she wanted to dispose of her estate; that he advised her to take home and review a draft of the will to ensure it met her desires; that they subsequently met again to review and execute the will; that he detected no lack of awareness or inability by Thompson to direct her final affairs on that date; that

he did not detect that she lacked the requisite testamentary capacity to execute the will or that she was being unduly influenced by someone else; and that she affirmatively stated that there was no such undue influence. Based on his decades of experience and his consultations with Thompson, the attorney concluded that Thompson had the requisite testamentary capacity and was not laboring under any undue influence when she executed her will. He further swore that as a long-standing member of the bar who had prepared hundreds of wills, he would not have allowed Thompson to go forward with executing her will if he had detected that she lacked testamentary capacity or was being unduly influenced.

The other subscribing witness to the will and the notary public who notarized the will also opined that Thompson was of sound mind at the time she executed the will. Both witnesses testified that they did not observe any lack of awareness, confusion, or other condition indicating that Thompson did not know what she was doing. They further testified that Thompson had declared that the will was of her own making and that it was done freely.

In attempting to show a genuine issue of material fact as to testamentary capacity, Creamer and Lowe cite an affidavit of Thompson's doctor in which he stated

that Thompson had advanced dementia in 2019. The doctor, however, clarified in a subsequent affidavit that his prior affidavit should not be construed to mean that Thompson did not have the requisite mental capacity to execute her will and that he could not attest to Thompson's mental state or capacity at the time she made her will. And less than a month after Thompson had executed her will, the doctor stated in a written correspondence that "Thompson is of sound mind to make decisions relating to her will and to sign her will."

Under these circumstances, "[r]egardless of the stigma associated with the term '[dementia]', [the doctor's affidavit] does not show how [Thompson] would have been unable to form a rational desire regarding the disposition of her assets. Indeed, [he] offered no explanation of how her . . . condition would affect her competency to make a valid will." *Wilson v. Lane*, 279 Ga. 492, 493 (614 SE2d 88) (2005). Without such an explanation, a mere "reference to . . . dementia cannot eliminate testamentary capacity. If it could, it would undermine societal confidence in the validity and sanctity of our testamentary system." Id. Under that system, "[t]he mental capacity to make a will is modest, and the law requires only that the testatrix have a decided and rational desire as to the disposition of her property. Indeed,

testamentary capacity may be possessed by weak-minded or feeble individuals. And anything less than a total absence of mind does not destroy testamentary capacity." *Patterson-Fowlkes v. Chancey*, 291 Ga. 601, 602 (732 SE2d 252) (2012) (citations and punctuation omitted). The doctor's affidavit relied upon by the appellants does not create a genuine issue of material fact as to whether Thompson had such a total absence of mind when she executed her will.

The appellants also point to affidavits of three friends of Thompson, all of whom indicated that they had seen Thompson in 2017 or 2018. They stated that Thompson had hallucinations, that her physical and mental health was not good, that she was late paying taxes and other bills, and that she needed 24-hour care. As the trial court found, none of the affidavits addressed Thompson's testamentary capacity when she executed her will in 2019. And while the affidavits addressed Thompson's weakened mental and physical state, "the law does not withhold from the aged, the feeble, the weak-minded, the capricious, the notionate, the right to make a will, provided such person has a decided and rational desire as to the disposition of his property." *Wilson*, supra at 492 (citation and punctuation omitted). See OCGA § 53-

4-11 (d) ("Neither advancing age nor weakness of intellect nor eccentricity of habit or thought is inconsistent with the capacity to make a will.").

Here, Manley offered "proof that [Thompson] was capable of forming a certain rational desire with respect to the disposition of her assets." *Wilson*, supra at 493. The affidavits cited by the appellants, however, do not create a jury question as to that capability. Even when "[c]onstruing the evidence in this case in the light most favorable to the [appellants, they have] not presented a genuine issue of material fact that [Thompson] lacked the requisite mental capacity when [s]he signed [her] will." *Prine*, supra at 310 (1).

2. *Undue influence*

"A will is not valid if anything destroys the testator's freedom of volition, such as . . . undue influence whereby the will of another is substituted for the wishes of the testator." OCGA § 53-4-12. "To invalidate a will, undue influence must amount to deception or coercion that destroys the testator's free agency. . . . And summary judgment is proper only if, construing the evidence most favorably for the caveators, no genuine issue of material fact remains as to whether [the testator's] will was the

product of undue influence." *Johnson v. Burrell*, 294 Ga. 301, 302 (2) (751 SE2d 301) (2013) (citations and punctuation omitted).

Creamer and Lowe argue that there is a presumption of undue influence because Manley occupied a confidential relationship with Thompson as her caregiver. Indeed, "a rebuttable presumption of undue influence arises when a beneficiary under a will occupies a confidential relationship with the testator, is not the natural object of his bounty, and takes an active part in the planning, preparation, or execution of the will." *Davison v. Hines*, 291 Ga. 434, 437 (729 SE2d 330) (2012) (citation and punctuation omitted). But as the trial court found, such a presumption does not apply in this case because even assuming that Manley occupied a confidential relationship with Thompson, there is no evidence that Manley took part in the planning, preparation, or execution of the will.

To the contrary, the uncontradicted evidence showed that Thompson used her own long-time lawyer to prepare the will; Manley was not part of the discussions about the will between Thompson and her lawyer; Thompson told her lawyer that she was not under any undue influence; Thompson declared that the will was of her own

making and done freely; and the testamentary scheme in the will was Thompson's alone, and not anyone else's scheme.

> Because there is simply no evidence that [Manley] took an active part in the planning, preparation, or execution of the [2019] will, no presumption of undue influence could arise despite the [alleged] existence of a confidential relationship between her and [Thompson]. In the absence of a presumption of undue influence, a confidential relationship, without more, would not support a finding of undue influence on [Manley's] part.

*Johnson*, supra at 303 (2) (citations and punctuation omitted). So the trial "court's grant of summary judgment to [Manley] on the issue of undue influence was proper." Id. at 305 (2).

*Judgment affirmed. Mercier, C. J., and Rickman, J., concur.*