## S97A0999. QUARTERMAN v. QUARTERMAN.
### (493 SE2d 146)

HINES, Justice.

This appeal is from the probate court's grant of summary judgment to the propounder of a will on all issues raised in the caveat. For the reasons which follow, we affirm.

Helen B. Quarterman executed a will on May 25, 1989, and died on January 4, 1990, survived by her two sons, appellant Kenneth Quarterman and appellee Alan Quarterman. On March 13, 1990, Alan, as the named executor of his mother's estate, filed a petition to probate her last will and testament. On March 23, 1990, Kenneth filed a caveat to the petition alleging that his mother did not freely and voluntarily execute the will because 1) she lacked the capacity to make a will, and 2) Alan exercised undue influence over her. Alan moved for summary judgment on August 26, 1996, which was granted on October 22, 1996.

1. Kenneth Quarterman contends there is a genuine issue of material fact as to whether his mother lacked testamentary capacity at the time of executing the will. Ms. Quarterman possessed the mental capacity to make a will if she understood that a will had the effect of disposing of her property at the time of her death, was capable of remembering generally what property was subject to disposition by will and remembering those persons related to her, and was capable of expressing an intelligent scheme of disposition. *Arnau v. Cochran*, 257 Ga. 550, 551 (1) (361 SE2d 173) (1987). The affidavit of the attorney who prepared the will and supervised its execution demonstrated that Ms. Quarterman had such capacity.

Kenneth's affidavit asserts that his mother had a history of erratic behavior and mental treatment creating an issue of fact regarding her mental capacity at the time she executed the will. However, assuming that the averments upon which he relies disclose behavior which would support a finding of incapacity, those averments relate to a period of time roughly 15 to 30 years prior to the execution of the will and shed no light upon Ms. Quarterman's testamentary capacity at the time she executed the will. See *Arnau*, supra. His averments of her behavior nearer in time to the execution of the will do not, even under the most favorable reading, support a finding that she was unable to understand the effect of a will, was incapable of remembering what property she possessed or those persons related to her, or that she was incapable of expressing an intelligent scheme of disposition.

2. Kenneth also contends there is a genuine issue of material fact as to whether Alan exercised undue influence on their mother during the execution of her will, contending that his own affidavit shows Alan's control over Ms. Quarterman.

Undue influence such as to invalidate a will amounts to deception or force and coercion, operating on the testator at the time of execution such that the testator is deprived of free agency and the will of another is substituted for her own. *Sims v. Sims*, 265 Ga. 55, 56 (452 SE2d 761) (1995). Evidence showing only an opportunity to influence and a substantial benefit under the will does not show the exercise of undue influence. Id. at 55.

Kenneth asserts that because Alan lived with their mother for the last three years of her life and prevented Kenneth from seeing Ms. Quarterman or speaking with her on the telephone, there is evidence of undue influence. However, Kenneth's own affidavit reveals that he spoke with his mother on several occasions during the time Alan lived with her, both in and outside the presence of Alan. While Kenneth's averments concerning access to his mother do show an opportunity to influence, see *Gray v. Alexander*, 229 Ga. 722 (194 SE2d 108) (1972), there is no evidence that Alan exercised any influence on their mother at the time of execution, or near it. Although Alan did substantially benefit under the will, the mother chose to divide her property between her sons in equal shares based upon her valuation, a reasonable disposition. See *Sims*, supra at 56-57. Because the evidence shows only an opportunity to influence Ms. Quarterman, summary judgment on this ground was proper.

3. Kenneth also contends the court erred in ruling on the motion for summary judgment prior to the completion of discovery. He asserts the pretrial order permitted him to file interrogatories upon Alan, which he did, and which were outstanding at the time the court granted summary judgment. The pretrial order actually reopens discovery only "on a limited basis," allowing Kenneth to serve requests for production of documents on Alan, and allowing Kenneth to move for the deposition of Alan "upon a showing of good cause." The order does not contemplate interrogatories. Further, the court ruled at the hearing on the motion for summary judgment that the interrogatories were irrelevant to the motion, and Kenneth does not show how they were relevant.

Kenneth further argues that the court should have delayed ruling on the motion for summary judgment until ruling on his motion to depose Alan. However, there was no motion to depose his brother pending when summary judgment was granted.

4. Kenneth moved to recuse the probate court judge because Kenneth had initiated a lawsuit naming the judge as defendant. The judge ruled the motion was untimely and the supporting affidavit was insufficient, and the judge consequently neither recused himself nor referred the matter to another judge. See Uniform Probate Court Rules 19.1 and 19.2.

Uniform Probate Court Rule 19.1 requires that the motion to

recuse and supporting affidavit be filed "not later than 5 days after the affiant first learned of the alleged grounds for disqualification," and failure to do so is grounds for denial of the motion. See *Wellons v. State*, 266 Ga. 77, 88-89 (19) (463 SE2d 868) (1995) (concerning similarly worded Uniform Superior Court Rule 25.1); *Threatt v. State*, 211 Ga. App. 630 (2) (440 SE2d 61) (1994) (USCR 25.1); *Foody v State*, 200 Ga. App. 230 (407 SE2d 469) (1991) (USCR 25.1). Under Uniform Probate Court Rule 19.2, the court shall determine if the filing is timely before the motion is heard by another judge. Kenneth's affidavit shows that the action against the probate judge was filed July 8, 1996, and approved for filing in forma pauperis on July 9, 1996, see OCGA § 9-15-2 (d), yet the affidavit was not filed until July 18, 1996. It was therefore untimely and the court was correct in so ruling.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 24, 1997 —
RECONSIDERATIONS DENIED DECEMBER 19, 1997.

*John M. Cullum,* for appellant.
*Weiner, Shearouse, Weitz, Greenberg & Shawe, Aron G. Weiner, Edwin R. Byck,* for appellee.