## S03A0698. ASHFORD v. VAN HORNE.
(580 SE2d 201)

THOMPSON, Justice.

Caveator Carol Richardson Ashford appeals from the grant of summary judgment in favor of propounder Vivian Ashford Van Horne, in this contest over the Last Will and Testament of Dr. Alexander Woodson Ashford. We affirm.

The caveator is the estranged wife of the testator. The two were married in 1968, and she filed for divorce in 1999 after a lengthy separation. The testator died in 2001, during the pendency of the divorce proceedings.

In 1998, during the period of their separation, the testator met with attorney Bobby Gibson for the purpose of drafting a new will. The propounder, who is the testator's sister and executrix of his estate, drove him to Gibson's office for their initial meeting. The testator brought with him a copy of his old will, a memorandum containing his wishes as to the disposition of his property, and an audiotape of the memorandum of instruction. Gibson drafted the will based on the testator's instructions. The testator later returned the draft to Gibson with additional instructions which were incorporated into the final will. At all times during those conferences, the testator and Gibson met alone. The will was executed on July 1, 1999 and was witnessed by Gibson and his associate Berryman; no others were present.

In Item I, the testator stated that he had made provision for Ashford "outside of his will," in that she was to receive one-half of his military retirement and Social Security benefits. In addition, he bequeathed to her the marital home and named her as beneficiary of two life insurance policies. However, no life insurance policies naming Ashford as beneficiary existed at the time of the testator's death.

The testator bequeathed to the propounder a million-dollar-plus IRA; and an IRA in the approximate sum of $300,000 was left to two other sisters. The testator also established a trust for the purpose of medical research, naming the propounder and a nephew as trustees. The residue and remainder of the estate was left in four equal shares to the testator's three sisters and his nephews.

When the will was offered for probate in solemn form, a caveat was filed on the grounds of lack of testamentary capacity, monomania, undue influence, and unreasonableness. The parties waived judgment of the probate court and jointly appealed to the superior court, which granted summary judgment to the propounder. This appeal followed.

1. It is asserted that genuine issues of fact exist regarding the testator's testamentary capacity.

The testator possessed the mental capacity to make a will if he

"understood that a will had the effect of disposing of [his] property at the time of [his] death, was capable of remembering generally what property was subject to disposition by will and remembering those persons related to [him], and was capable of expressing an intelligent scheme of disposition." *Quarterman v. Quarterman*, 268 Ga. 807 (1) (493 SE2d 146) (1997). The controlling question is "whether the testator had sufficient testamentary capacity *at the time of executing the will*." (Emphasis supplied.) *Spivey v. Spivey*, 202 Ga. 644, 652 (2) (44 SE2d 224) (1947). A propounder has satisfied its burden of establishing a prima facie showing of testamentary capacity by offering testimony of the subscribing witnesses that the testator appeared to be of sound mind and that he acted freely and voluntarily when he executed his will. *Singelman v. Singelmann*, 273 Ga. 894 (1) (548 SE2d 343) (2001). The burden then shifts to the caveator to show that a genuine issue of material fact remains as to testamentary capacity. Id.; *McGee v. Ingram*, 264 Ga. 649 (2) (448 SE2d 439) (1994).

The propounder presented the affidavits of the two attesting witnesses, attorneys Gibson and Berryman, both of whom affirmed their belief that the testator was mentally competent to make his will. Gibson also averred that when the testator came to his office for final review and execution of the will, they had lengthy discussions regarding the disposition of his estate as well as the tax consequences, and that the testator thoroughly understood the consequences of his testamentary plan. It was Gibson's policy to make an assessment of the competency of the client in these circumstances and he was "completely satisfied that Dr. Ashford was fully cognizant of the effect of the Last Will and Testament that he was publishing and executing on that date, did so freely and voluntarily, and was competent to do so."

In attempting to rebut this prima facie showing of testamentary capacity, the caveator points to evidence that the two life insurance policies referred to in the 1999 will did not exist at the time of the testator's death in 2001; and that the testator made five misstatements in a deposition taken in the divorce proceedings, 13 months prior to the execution of his will. The propounder deposed that two insurance policies were in fact in force at the time of the testator's death, naming her as beneficiary of one, and all three sisters as the beneficiaries of the other. That the testator may have been mistaken about the beneficiary designations on the policies, or had a change of heart as the divorce progressed, does not raise a genuine issue of fact as to lack of testamentary capacity. See *Singelman v. Singelmann*, supra at 897 (a testator need not have had specific or exact knowledge of his income or assets). Further, the testator's misstatements during his divorce deposition do not indicate that he lacked testamentary capacity as that term is defined in OCGA § 53-4-11 (a), nor

does that evidence establish testamentary incapacity as of the date of the execution of the will. See *Kievman v. Kievman*, 260 Ga. 853, 854 (400 SE2d 317) (1991).

2. Nor was there evidence to show that at the time the testator made his will he was afflicted with monomania, or that monomania had any effect upon the disposition of his property.

> Monomania is a diseased condition of the mind . . . which can be co-existent with sanity. The monomaniac is subject to hallucinations and insane delusions as to one or a few subjects and yet is perfectly rational as to others; he believes in the reality of events which have never occurred and in things which do not exist, and he is incapable of being permanently reasoned out of his erroneous conceptions.

*Yarbrough v. Yarbrough*, 202 Ga. 391, 405 (10) (43 SE2d 329) (1947). "The paramount question in the case is whether . . . the testator was, at the time he made his will, afflicted with monomania from which his will resulted or with which it was connected." Id. The incidents related by the caveator are commonplace hostilities in a failing marriage and did not occur at the time the will was made. Accordingly, the caveator has produced no evidence that the instrument sought to be propounded was the result of monomania.

3. The caveator also claims that the will is invalid due to the undue influence the propounder exercised over the testator.

> "Undue influence which operates to invalidate a will is such influence as amounts either to deception or to force and coercion, destroying free agency." [Cit.] [T]he improper influence must operate on the testator's mind at the time the will is executed. [Cit.] Evidence that shows no more than an opportunity to influence and a substantial benefit falls short of showing the exercise of undue influence.

*Sims v. Sims*, 265 Ga. 55, 56 (452 SE2d 761) (1995). Caveator points to evidence that the propounder drove the testator to his initial meeting with attorney Gibson, and that at some other time, she may have been informed by the testator of his testamentary plan. Even if it could be said that this evidence raises a suspicion that propounder exercised undue influence over Dr. Ashford at the time he executed the will, caveator has certainly not shown that the propounder "was exercising such force or duress that [she] destroyed [his] free agency, substituting [her] will for [his] own." (Punctuation omitted.) *McGee,* supra at 651 (1). And as in *McGee,* testimony of the subscribing witnesses shows that the propounder was neither present nor did she participate when the testator

reviewed and executed his will, and that he appeared to be acting of his own free will. It follows that summary judgment was properly granted on the claim of undue influence. Compare *Skelton v. Skelton*, 251 Ga. 631 (5) (308 SE2d 838) (1983) (undue influence shown where the propounder was present when the will was executed and discussed its contents with the scrivener).

4. The caveator did not come forward with any evidence tending to prove the unreasonableness of the testator's will. "A testator by will, may make any disposition of property that is not inconsistent with the laws or contrary to the public policy of the state and may give all the property to strangers, to the exclusion of the testator's spouse and descendants." OCGA § 53-4-1. Simply because the testator chose to bequeath the majority of his estate to other relatives rather than to his estranged wife during the period of their separation does not invalidate his will on grounds of unreasonableness.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 29, 2003 —
RECONSIDERATION DENIED JUNE 2, 2003.

*Thomas M. Strickland*, for appellant.
*John F. Lyndon, Benton, Preston & Malcom, Eugene M. Benton, Robert M. Malcom*, for appellee.