## S05A0258. CURRY v. SUTHERLAND et al.
(614 SE2d 756)

HINES, Justice.

Caveator Mary Nan Curry appeals from the grant of summary judgment to the propounder of the will of her father, Paul Curry. Finding that the grant of summary judgment was proper, we affirm.

Paul Curry executed a will on July 17, 2002; he was then 86 years old. He named his caregiver, Jean Sutherland, as Executrix and named his friend, James Clanton, as alternate Executor. Sutherland, Clanton, and another friend of Paul Curry's, Steve Grissett, were named as equal beneficiaries of his entire estate; he specifically excluded his daughter and only child, Mary Nan Curry ("Curry"), as a beneficiary. The testator died on April 4, 2003, and the will was presented for probate on May 20, 2003. Curry filed a caveat to probate based on incapacity and undue influence. After discovery and a trial, the probate court entered an order to probate the will. Curry appealed to the superior court and Clanton[1] moved for summary judgment. The court granted the motion and ordered that the case be remanded to the probate court, and the will be admitted to probate. Curry appeals.[2]

1. Curry contends that the testator did not have the capacity to make a will.

> The testator possessed the mental capacity to make a will if he "understood that a will had the effect of disposing of [his] property at the time of [his] death, was capable of remembering generally what property was subject to disposition by will and remembering those persons related to [him], and was capable of expressing an intelligent scheme of disposition." [Cit.]

*Ashford v. Van Horne*, 276 Ga. 636, 636-637 (1) (580 SE2d 201) (2003). " 'To set aside a will and thus deprive a person of the valuable right to make a will, a stringent standard must be met.' " *Holland v. Holland*, 277 Ga. 792, 795 (4) (596 SE2d 123) (2004).

The evidence that Curry contends shows a lack of capacity is a line in a medical record entered by the testator's physician on April 23, 2002, which contains the word "dementia." But, the presence of that word in the medical record does not demonstrate incapacity. First, the entry of that date does not record a physical examination of

---

[1] Sutherland renounced executorship and Clanton was appointed to serve as executor.

[2] Although Curry states that she had no knowledge that the record from the probate court was transmitted to the superior court, there is no indication in the record that the proper procedures were not followed. See OCGA §§ 5-3-28; 5-3-29.

the testator, but rather a "lengthy family conversation"; there is no indication that the testator was even present. Further, the line on which "dementia" appears reads: "A: 1. Hypertension 2. Recent UTI 3. Dementia." The record does not reflect if this use of the word is a diagnosis, a report from family members, or a matter for concern at later examinations. In any event, there is no evidence concerning the medical meaning or implication of the word "dementia" as used in the record, or that, even if it reflected a diagnosis, it was a condition that continued to exist at the time the will was executed. Without such information, the presence of that word alone does not indicate a mental condition that would meet the standard for a finding of lack of capacity.

On the other hand, there was evidence from the testator's accountant and lawyer that at the time of his estate planning consultations, and when he executed the will, the testator was aware of the property he possessed and of his relatives, and that he expressed an intelligent scheme of disposition. The attorney who drafted the will specifically asked the testator if he did not wish to leave his property in trust for his daughter. The testator stated that her alcoholism had created problems between them, and that if she received any money she would "drink herself to death." In his will, he specifically noted that he had made provisions for her during his life.[3] The trial court correctly granted summary judgment to Clanton on Curry's incapacity claim.

2. Curry also asserts that the will in favor of Sutherland and the two other beneficiaries was the result of Sutherland's exercise of undue influence over the testator.

> Undue influence sufficient to invalidate a will amounts to deception or force and coercion operating on the testator at the time of execution such that the testator is deprived of free agency and the will of another is substituted for his. Evidence showing only an opportunity to influence and a substantial benefit under the will does not show the exercise of undue influence.

*Holland*, supra at 793 (2). Even when a confidential relationship exists, to support a claim of undue influence, any influence shown must be "influence that . . . would give dominion over the will to such

---

[3] Uncontroverted evidence showed that the house in which the testator had lived until a few months before his death was in his daughter's name only, although he paid associated bills, including the house payments for a number of years, and that shortly before he executed the will, Curry informed the testator that she wished him to leave the house.

an extent as to destroy free agency, or constrain one to do against his will what he is unable to refuse. [Cits.]" Id.

Again, Curry does not point to evidence before the trial court that creates an issue of fact on this claim. Although Sutherland told another caregiver that she was a beneficiary under the will, that does not show the exercise of undue influence. Curry asserts that Sutherland forced the testator to purchase a house next to her own at the inflated price of $45,000, but there is no evidence of any coercion on Sutherland's part, or that the price did not reflect the true market value. Although Sutherland had a power of attorney from the testator and signed his name on checks, it is undisputed that the testator signed the will. The only evidence concerning the testator's decision to execute the will shows that Sutherland played no part in it. See *Harper v. Harper*, 274 Ga. 542, 544 (2) (554 SE2d 454) (2001). Evidence that the testator placed confidence in Sutherland, relied upon her, and sometimes took her directions, showed at most the opportunity to influence him; there is no evidence that she exercised any undue influence either at the time of execution of the will, or near it. See *Quarterman v. Quarterman*, 268 Ga. 807, 808 (2) (493 SE2d 146) (1997). It was not error to grant summary judgment on Curry's claim of undue influence.

3. Curry also complains of the trial court's ruling that her response to Clanton's motion for summary judgment was filed too late to be considered. The motion was filed on June 8, 2004; no hearing on the motion was requested or set. Curry responded to the motion on August 11, 2004. The next day, the court issued its order granting the motion, stating that the August 11, 2004 filing was untimely. This was not error. See *Hosley v. Davidson*, 211 Ga. App. 529, 530-531 (1) (439 SE2d 742) (1993); *Winchester v. Sun Valley-Atlanta Assoc.*, 206 Ga. App. 140, 141 (1) (424 SE2d 85) (1992); *Thompson v. Tom Harvey Ford Mercury*, 193 Ga. App. 64 (387 SE2d 28) (1989).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 16, 2005 —
RECONSIDERATION DENIED JUNE 30, 2005.

*W. Benjamin Ballenger*, for appellant.
*Meeks & Richardson, W. Gene Richardson, Brinson, Askew, Berry, Seigler, Richardson & Davis, C. King Askew*, for appellees.