## S06A0665. POPE v. McWILLIAMS.

(632 SE2d 640)

HINES, Justice.

This is a pro se appeal by plaintiff caveator James R. Pope from the superior court's grant of summary judgment in favor of defendant propounder Ruth McWilliams in this challenge to the Last Will and Testament of Gordon K. Grigsby. For the reasons which follow, we affirm the grant of summary judgment.

In the presence of two witnesses and a notary public, Gordon K. Grigsby executed a Last Will and Testament on April 14, 2004, as a self-proving document. His sister, Ruth McWilliams, who was named as executrix, accompanied him to the lawyer's office where the will was executed.

---

Grigsby died on October 14, 2004. On October 22, 2004, McWilliams petitioned the probate court to probate Grigsby's will in solemn form. On November 9, 2004, James R. Pope, Grigsby's nephew by a then deceased sister, filed a pro se document with the probate court, titled "Objection to Gordon K. Grigsby's Last Will." Pope's objections included: the will was secretly made and altered a prior will; the new will was made because of undue influence, fraudulent practices, and duress; Grigsby's mental capacity was inadequate at the time of the new will; and parts of the will were "overly broad and overly vague which may conflict with some laws."

The will, inter alia, devised Grigsby's real estate to McWilliams, and in the event that McWilliams predeceased Grigsby, to her lineal descendants; McWilliams's two sons had farmed Grigsby's land for about 15 years prior to Grigsby's death. Also, the will devised and bequeathed the remainder of Grigsby's estate to his brother, a niece who is Pope's sister, and to Pope; there were investments included in the estate valued at approximately $300,000 to $400,000. Apparently, in a prior will, Pope's mother was to get a share of the estate, including the real property.

The probate court granted summary judgment to McWilliams, after expressly finding that Pope failed to show any evidence that Grigsby was under undue influence or duress or that he lacked sufficient mental capacity at the time he executed the will in question. Pope appealed to the superior court, which denied the appeal and granted summary judgment to McWilliams.

1. Pope contends that the superior court erred in granting summary judgment to McWilliams because there are genuine issues of material fact on the question of undue influence. As evidence of this alleged undue influence, Pope cites numerous circumstances and primarily a statement made in affidavit by Pope's sister that before the creation of the new will, McWilliams told Grigsby that "We have got to go make that will." Pope also emphasizes that the change to the will was not made known to him at the time. He urges that this coupled, inter alia, with Grigsby's susceptibility because of his age, infirmity, and mental deterioration, the confidential relationship enjoyed by McWilliams, the unreasonableness of the will, and actions by McWilliams including her taking Grigsby to her attorney's office without the knowledge of the others named in the will and her paying the attorney with a check drawn on an account held jointly with Grigsby demonstrate McWilliams's undue influence on Grigsby. But that is hardly the case.

Certainly,

[i]n order for a will to be valid, it must be freely and voluntarily executed, and anything which destroys the freedom of volition, such as undue influence, causes the will to be invalid. Undue influence to procure a will may take many forms and may operate through diverse channels. Moreover, the existence and effective power of undue influence can rarely be shown except by circumstantial evidence. Thus, "an attack on a will as having been obtained by undue influence may be supported by a wide range of testimony, . . . [including evidence of] a confidential relation between the parties, the reasonableness or unreasonableness of the disposition of the testator's estate, old age, or disease affecting the strength of the mind, tending to support any other direct testimony or any other proved fact or circumstance going to show the exercise of undue influence on the mind and will of the testator. . . ."

(Citations omitted.) *Dyer v. Souther*, 272 Ga. 263, 264-265 (2) (528 SE2d 242) (2000).

First, pretermitting any question of the probative value of the cited statement allegedly made by McWilliams, it does not aid Pope. It does not demonstrate that McWilliams forced, in any manner, Grigsby to make the will. In fact, McWilliams testified in deposition that Grigsby changed his will in order to be more specific about what he wanted done with his estate so as not to leave the disposition of the estate "all on [McWilliams's] shoulders."

Second, there is no moment to Pope's complaint that the will was executed without notice to him and presumptive heirs other than McWilliams. There is no requirement that a testator notify anyone expecting to inherit from the testator that a will is being executed. In fact, when asked in deposition if creating a will should be a matter of public record, Pope acknowledged that it is a private matter.

Next, Pope points to what he contends was a confidential relationship between McWilliams and Grigsby as central to his claim of undue influence. It is true that

[a] presumption of undue influence arises when it is shown that the will was made at the request of a person who receives a substantial benefit, who is not a natural object of the maker's estate, and who held a confidential relationship with the testator. However, a person standing in confidential relation to another is not prohibited from exercising any influence whatever to obtain a benefit to himself. The influence must be what the law regards as undue influence. Such influence that . . . would give dominion over the will to such

an extent as to destroy free agency, or constrain one to do against his will what he is unable to refuse.

(Citations and punctuation omitted.) *Holland v. Holland*, 277 Ga. 792, 793 (2) (596 SE2d 123) (2004). First, it is plain that McWilliams was a natural object of Grigsby's estate. But, assuming arguendo that she was not, such influence as would destroy Grigsby's free agency or constrain him to act against his will has not been shown to be the case here. Moreover, in her deposition, McWilliams stated that the relationship was one of mutual trust. In contrast,

[a] confidential relationship is one where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another. Evidence showing only that the deceased placed a general trust and confidence in the primary beneficiary is not sufficient to trigger the rebuttable presumption that undue influence was exercised. . . . In order to give rise to the rebuttable presumption . . . , the evidence must show a confidential relationship wherein the primary beneficiary was capable of exerting the power of leadership over the submissive testator.

(Citations and punctuation omitted.) Id.

Pope's argument that the will was in some way unreasonable and therefore indicative of undue influence is likewise unavailing. The disposition of the real estate is readily understandable inasmuch as McWilliams's sons were the ones who had been farming the property for more than a decade prior to Grigsby's death. Indeed, another family member averred in affidavit that he had expected Grigsby to give his land to McWilliams because her sons had farmed the land and thus, she would be able to pass the land to them so they could continue to farm it. In addition, Pope's claim that certain language in the will is unreasonable, and even illegal, is wholly without merit.

In summary,

[u]ndue influence which operates to invalidate a will is such influence as amounts either to deception or to force and coercion, destroying free agency. The improper influence must operate on the testator's mind at the time the will is executed. Evidence that shows no more than an opportunity to influence and a substantial benefit falls short of showing the exercise of undue influence.

(Citations and punctuation omitted.) *Ashford v. Van Horne*, 276 Ga. 636, 638 (3) (580 SE2d 201) (2003). Even accepting arguendo, that the

many circumstances listed by Pope raise a suspicion that McWilliams exercised undue influence over Grigsby at the time he executed the will, Pope clearly has not demonstrated an issue of fact that at the time of execution of the will McWilliams was exercising that degree of force or duress so as to destroy Grigsby's free agency and substitute her will for his. Id.

2. Pope next contends that summary judgment was not warranted because there are genuine issues of material fact concerning Grigsby's mental incapacity. But here again, Pope's showing falls far short.

A testator possesses the mental capacity to make a will if he understands that his will has the effect of disposing of his property at the time of his death, is capable of remembering generally what property is subject to disposition by the will and remembering those persons related to him, and is capable of expressing an intelligent scheme of disposition. *Curry v. Sutherland*, 279 Ga. 489 (1) (614 SE2d 756) (2005). A stringent standard must be met in order to set aside a will because to do so is to deprive a person of the valuable right to dispose of his property as he wishes. Id. Beyond his own opinion about Grigsby's forgetfulness and state of mind, the only arguably significant evidence that Pope presents on the subject of lack of capacity is a hospital discharge paper stating that the doctors "[c]ould not exclude some early dementia." But, the mere presence of that notation does not demonstrate incapacity. Id. Moreover, this was six months after Grigsby's execution of the will in question. What is more, in affidavit, Pope acknowledges that he is not contending that Grigsby was "completely or severely mentally incompetent," but rather that he was merely "in the early state of mental deterioration."

The witnesses to the will were unequivocal in their opinions that Grigsby was fully aware of what he was doing. The notary public on the will averred that there was no question in her mind that Grigsby acted competently and freely and voluntarily in executing his will. In fact, she averred that Grigsby stated that "he was leaving his real property to his sister, Ruth McWilliams, because her sons, Mark and David had worked his farm since he wasn't able to do as much, and knew that his sister would keep his land in the family." The notary further related that she remembered Grigsby "laughing and stating that he knew if his nephew, Jim Pope, had his way, he would want everything."

There is simply no question of fact that Grigsby understood the nature and effect of his will. *Curry*, supra.

3. Next, Pope contends that the superior court erred in granting summary judgment because there were genuine issues of material fact as to whether Grigsby had previously made an irrevocable family agreement with all his presumed heirs to distribute his estate evenly

among them. But, Pope points only to conjecture and hearsay to establish the existence of such an agreement; therefore, there is no genuine issue of material fact in this regard.

4. Finally, contrary to Pope's contention, he has failed to show that Grigsby's will is in conflict with Georgia law. See Division 1, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 13, 2006.

James R. Pope, *pro se.*
*John W. Rhyne, Jr.,* for appellee.