S11A1061. SIMMONS et al. v. NORTON et al.
(719 SE2d 421)

HINES, Justice.

Caveators Celia Beth Simmons ("Beth") and Lisa Kay Norton ("Lisa") appeal from the grant of summary judgment to the propounder of the will of their father, Charles Powell Norton ("Charles"). For the reasons that follow, we affirm.

In addition to daughters Lisa and Beth, Charles had two sons, Charles N. Norton ("Nick") and Samuel P. Norton ("Samuel"). Charles died on July 21, 2009. Under a will he executed on May 27, 2008, a house in Lakeland, Georgia, was bequeathed to Lisa, a separate house in Lakeland was to go to Beth, and a farm in Lanier and Lowndes Counties, Georgia, was to be equally divided between Nick and Samuel; any vehicle he owned at the time of death, as well as all fishing tackle and firearms, was left to a named grandson, funds in his checking account were to be divided between his three

grandchildren,[1] and the residue of his property was to be divided equally between his four children.

Samuel was named as the executor under Charles's will, and he offered it for probate. Beth and Lisa filed a caveat, and, after a hearing, the probate court rejected the caveat and granted the petition to probate the will in solemn form. Beth and Lisa appealed to the superior court, which granted Samuel's motion for summary judgment.

Beth and Lisa contend that the superior court erred in granting summary judgment on their claim that the will was the product of undue influence on the part of Samuel.

> Undue influence sufficient to invalidate a will amounts to deception or force and coercion operating on the testator at the time of execution such that the testator is deprived of free agency and the will of another is substituted for his. Evidence showing only an opportunity to influence and a substantial benefit under the will does not show the exercise of undue influence. [Cit.]

*Holland v. Holland*, 277 Ga. 792, 793 (2) (596 SE2d 123) (2004).

There is simply no evidence that Samuel exerted any influence over Charles in the making of the will, and it was thus not error to grant summary judgment. *Lipscomb v. Young*, 284 Ga. 835, 836 (672 SE2d 649) (2009). Undue influence must operate on the mind of the testator at the time of the will's execution. Id. at 837. The unrebutted evidence was that on May 13, 2008, Charles met with the attorney who was to draft the will. Charles was alone, and explained to the attorney how he wanted his property disposed of upon his death; the attorney made an appointment for Charles to return to the office on May 27, 2008, and prepared the will as requested. There is no evidence Samuel communicated with Charles near the time of the May 13, 2008 meeting; Samuel lived in Dahlonega, Georgia, a considerable distance from Charles's Lanier County home. On May 27, 2008, Samuel was visiting Charles when Charles told Samuel that they were going for a drive, and Samuel drove Charles to the attorney's office; Samuel did not know where they were going before getting into the vehicle. When they arrived at the attorney's office, Samuel went inside to greet the attorney and then waited in the vehicle; after Charles executed the will, Samuel was given a copy and told he had been named as the executor of Charles's estate.

Thus, the only evidence concerning Charles's decision to execute

---

[1] All three grandchildren were Samuel's offspring.

the will shows that Samuel played no part in it. See *Harper v. Harper*, 274 Ga. 542, 544 (2) (554 SE2d 454) (2001). And, there is no evidence of any special relationship between Samuel and Charles, beyond that typical of father and son. In any event, even if such a confidential relationship were shown, it would not support a finding that Samuel actually exercised undue influence. Id. At most, the evidence shows that Samuel had the opportunity to influence Charles, which is insufficient to show the exercise of undue influence. See *Quarterman v. Quarterman*, 268 Ga. 807, 808 (2) (493 SE2d 146) (1997).

Although the caveators produced evidence that Charles, at various times before executing his will, expressed the intent to leave all of his property, including the farm, to his four children in equal shares, such declarations do not show the exercise of undue influence.[2] *Lipscomb*, supra at 837. And, evidence regarding Charles's physical and mental health during his last years is of little relevance, given the absence of any evidence that Samuel actually attempted to exert influence with respect to Charles's will and execution thereof. Id. Finally, the caveators contend that undue influence is shown by evidence that, in 2009, Samuel, operating under a power of attorney also executed on May 27, 2008, placed Charles in health care facilities closer to Samuel's own home than to Charles's, and also that at some time after the will was executed, Charles changed the listed beneficiaries of bank certificates of deposit from his four children to only Samuel. However, even assuming that such evidence would support a finding of the exercise of undue influence after the will was executed, they do not support a finding that Samuel exercised undue influence regarding Charles's making of the May 27, 2008 will. Id.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 2011 —
RECONSIDERATION DENIED NOVEMBER 30, 2011.

*Byron D. Watson*, for appellant.
*Elliott, Blackburn & Gooding, Walter G. Elliott II*, for appellee.

---

[2] A week after executing the will, Charles told an employee of the will's disposition of his real property, and said that his reasons for leaving the family farm to Samuel and Nick were to keep it in the Norton family, and to provide his grandson Ethan Norton with a place to hunt.