## S11A1315. PRINE v. BLANTON et al.
(720 SE2d 600)

HUNSTEIN, Chief Justice.

Debra Prine filed a caveat challenging the validity of her father's will on the grounds that he lacked testamentary capacity and was operating under undue influence. The probate court ordered the probate of the will in solemn form, and the superior court granted summary judgment to the estate. Because the record shows there is no genuine issue of material fact regarding the lack of testamentary capacity or undue influence at the time the testator executed his will, we affirm.

Testator Melvin H. Blanton's 1990 will and family trust divided the majority of his assets equally among his four surviving children and a granddaughter who was the child of his deceased daughter. In August 2008, Blanton met with his attorney and directed him to change his will and trust to exclude Prine, his one surviving daughter. On September 17, 2008, while in the hospital, Blanton executed a new will and second amendment to the trust that left most of his property to his three sons through the Blanton Trust and excluded Prine as a beneficiary. The following day, Blanton was placed in intensive care. He was discharged three weeks later to hospice care and died in February 2009.

Blanton's sons and co-executors, Timmy M. Blanton and Greg Blanton, filed a petition to probate the will in solemn form. Following a bench trial, the probate court found that Melvin Blanton was of sufficient sound and disposing mind and was not subjected to undue or illegal influence at the time he executed his will and trust amendment. Prine appealed to the superior court, and the executors filed a motion for summary judgment, which the superior court granted.

1. A testator possesses the mental capacity to make a will if he understands that he is executing a document that will dispose of his property after death, is capable of remembering the property that is subject to his disposition and the persons related to him by blood and affection, and " 'has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property.' " *Spivey v. Spivey*, 202 Ga. 644, 651 (2) (44 SE2d 224) (1947) (Citation omitted.). "[T]he controlling question . . . is whether the testator had sufficient testamentary capacity at the time of executing the will." Id. at 652.

On appeal from the grant of summary judgment, this Court construes the evidence in the light most favorable to the party opposing the motion to determine whether the record shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56; *Campbell v. The Landings Assn., Inc.*, 289 Ga. 617, 618 (713 SE2d 860) (2011). In a will case, the propounder establishes a prima facie showing of testamentary capacity "by offering testimony of the subscribing witnesses that the testator appeared to be of sound mind and that he acted freely and voluntarily when he executed his will." *Ashford v. Van Horne*, 276 Ga. 636, 637 (1) (580 SE2d 201) (2003). To avoid summary judgment, the caveator must then show that a genuine issue of material fact remains on the question of testamentary capacity. See *McGee v. Ingram*, 264 Ga. 649, 651 (2) (448 SE2d 439) (1994).

In this case, the propounders presented the affidavit of the attorney who drafted and witnessed the will stating that Blanton was of a sufficient sound and disposing mind and memory at the time he instructed the attorney on how to prepare the will and at the time he executed it. The other subscribing witness and the notary public who executed the self-proving affidavit attached to the will also verified that Blanton knew he was signing his last will and testament and he appeared to be of sound and disposing mind and memory at the time.

His treating physician testified in a deposition that during office visits in 2008 Blanton was "sharp as a tack," showing no symptoms of mental instability, confusion, dementia, hallucinations, or declining mental condition. Blanton was admitted to the hospital on September 15, 2008, after he complained of abdominal pain and fever. Two days later he executed the new will and trust amendment. His physician testified that Blanton was his usual self on the morning the will was executed, his condition was improving, and his medications would not have affected his mental ability. During his rounds on the following morning, the physician found that Blanton

had declined sharply and referred him to a specialist for a neurology consultation and admitted him into the hospital's intensive care unit.

To create a jury question on the lack of testamentary capacity, the caveator relies on the medical records and findings of the neurologist from his examination of the testator the day after the will was executed. OCGA § 24-3-18 provides a hearsay exception for medical reports in civil cases without requiring the doctor to testify at trial. *Bell v. Austin*, 278 Ga. 844, 845 (1) (a) (607 SE2d 569) (2005). The report must be "in narrative form," be signed and dated by an examining or treating physician or other health care professional listed in the statute, and address the "history, examination, diagnosis, treatment, prognosis, or interpretation of tests or examinations" by the author. OCGA § 24-3-18 (a). In *Bell v. Austin*, we considered a challenge to the statute on the grounds that it violated due process because the phrase "medical report in narrative form" was unconstitutionally vague and indefinite. Rejecting the challenge and upholding the statute as constitutional, we explained that the law applies to reports that set out in "story form" the doctor's assessment of the patient. *Bell*, 278 Ga. at 847. The law permits "the admission of only those reports which . . . set forth the relevant information in prose language that is more readily understandable to laymen" than unexplained medical terms and test results. Id.

In this case, the neurologist's consultation report fails to meet the standards of a "narrative form" under *Bell v. Austin*. Although the report has some sections that use plain language understandable to a juror, it relies heavily on unexplained medical terms and abbreviations, includes lab results with minimal interpretation, and fails to set forth an assessment of the patient in story form. As a report prepared for the treating physician, it is the type of medical record that would require an expert analysis to clarify its implications. See id. See also *Lott v. Ridley*, 285 Ga. App. 513 (1) (647 SE2d 292) (2007) (holding recitation of neurologist's unedited office records that do not explain medical terms and test results is not a medical narrative as contemplated by statute). See generally Paul S. Milich, Georgia Rules of Evidence § 19:16 (2011-2012 ed.) ("The 'narrative' required in the statute should be prepared (or approved and signed) by the physician or other listed health care provider in response to a specific request to prepare such a narrative for litigation."). Therefore, we conclude that the neurologist's report is not admissible under the hearsay exception for medical reports in OCGA § 24-3-18.

The caveator also relies on the affidavits of four lay witnesses. These witnesses either did not see Blanton until after he was admitted into intensive care or were vague about when they had seen

him confused or hallucinating. The caveator testified that she did not see her father in the hospital until after work on the day he executed his will, he knew who she was at that time, and she had no knowledge of his mental condition earlier in the day. Evidence that the testator was aged, ill, and in pain when he executed his will or that his medical condition deteriorated while he was in the hospital does not show lack of testamentary capacity to make a will. Compare *Strong v. Holden*, 287 Ga. 482, 484 (1) (697 SE2d 189) (2010) (upholding grant of summary judgment to propounders because evidence showed testator had requisite capacity two days before she died despite being elderly, hospitalized, physically weak, and taking prescribed medications) with *Kievman v. Kievman*, 260 Ga. 853, 854 (1) (400 SE2d 317) (1991) (reversing grant of summary judgment to propounders based on daughter's affidavit that testator was ill, heavily medicated, and incoherent before the will was executed, the day he executed it, and for some days after its execution). Construing the evidence in this case in the light most favorable to the caveator, she has not presented a genuine issue of material fact that the testator lacked the requisite mental capacity when he signed his will.

2. To invalidate a will, undue influence must amount to deception or coercion that destroys the testator's free agency. *Bohler v. Hicks*, 120 Ga. 800, 809 (6) (48 SE 306) (1904). The improper influence must operate on the testator's mind at the time the will is executed. *Boland v. Aycock*, 191 Ga. 327, 329 (12 SE2d 319) (1940). The testator's choice of naming one relative instead of another as the favored beneficiary is an insufficient reason to deny probate of the will. *Cornelius v. Crosby*, 243 Ga. 26, 28 (5) (252 SE2d 455) (1979).

The caveator has not presented a genuine issue of material fact on the question of undue influence. Blanton's attorney and the subscribing witnesses attested that they believed he signed his will freely and voluntarily. His treating physician and other witnesses described the testator as strong-willed, stubborn, opinionated, and not susceptible to influence. There is no evidence that the propounders exerted any power or control over Blanton, coerced him into signing the will, or prevented the caveator and others from visiting him in the hospital or at his home. Therefore, the trial court correctly granted summary judgment to the propounders on the grounds of undue influence. See *Quarterman v. Quarterman*, 268 Ga. 807, 808 (2) (493 SE2d 146) (1997) (finding caveator raised no genuine issue of material fact on undue influence when evidence showed he was not prevented from speaking to his mother during the three years his brother lived with her); *Sims v. Sims*, 265 Ga. 55, 56 (452 SE2d 761) (1995) (overturning jury verdict in favor of caveators, finding there was no evidence that testator's two surviving sons exercised coercion or undue influence over him).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 9, 2012.

*James F. Council, Jr., William D. Edwards,* for appellant.
*William A. Turner, Jr.,* for appellees.