S13A0728. JOHNSON et al. v. BURRELL.
(751 SE2d 301)

BLACKWELL, Justice.

In May 2009, Hubert H. Johnson made a new will, in which he devised his most substantial asset — a pecan farm of 350 acres in Dougherty County — to Donna Ellis Burrell. He died a few weeks later, and Donna promptly filed a petition to probate the will that Hubert made in May 2009. Two of his kin filed caveats, however, alleging that Donna had exerted undue influence upon Hubert with respect to the making of that will, and alleging that Donna had made false statements to Hubert, upon which he relied in making the will. As to the caveats, the probate court awarded summary judgment to Donna, and the caveators appeal. We see no reversible error and affirm.

1. The record shows that Hubert was married to Ruby Johnson, and he adopted her son, Henry Johnson. As early as 1992, however, Henry was estranged from Hubert and Ruby, and they did not name him as a beneficiary in any of the several wills that they made in the years that followed. Hubert and Ruby were close, however, to her great niece, Kendall Hash. After Ruby died, Hubert made a will in 2001 that left his pecan farm to Hash. He also made wills in August 2007 and June 2008 that left the farm to Hash. Henry and Hash are the caveators in this case.

Lynn Burrell lived in a house on the pecan farm,[1] and in 2005, Donna moved in with Lynn. Donna worked closely with Hubert on the farm, and near the end of his life, she also helped him with his personal needs, including by cooking his meals, paying his bills, driving him to medical appointments, and helping him with his medications. In 2008, Hubert executed a power of attorney in favor of Donna. In wills that Hubert made in 2006 and December 2007, Hubert left the pecan farm to Donna. Hubert made his final will on May 28, 2009, again leaving the pecan farm to Donna. He died on June 21, 2009, at the age of 96.

2. The caveators contend that the probate court erred when it awarded summary judgment to Donna on their claim of undue influence.[2] "A will is not valid if anything destroys the testator's

---

[1] Hubert and Lynn were not related, but Hubert apparently allowed Lynn to live on the pecan farm and use a portion of it, and Hubert also left certain personal property to Lynn in several of his wills.

[2] The caveators contend that the probate court improperly decided disputed issues of fact when it awarded summary judgment to Donna, rather than viewing the evidence in the light most favorable to the caveators. See OCGA § 9-11-56 (c) (standard for summary judgments). See also OCGA § 15-9-121 (b) ("Notwithstanding other laws, for any civil case in which a jury

freedom of volition, such as . . . undue influence whereby the will of another is substituted for the wishes of the testator." OCGA § 53-4-12. "To invalidate a will, undue influence must amount to deception or coercion that destroys the testator's free agency." *Amerson v. Pahl*, 292 Ga. 79, 80 (2) (734 SE2d 399) (2012) (citation and punctuation omitted). "The question of undue influence is generally for the factfinder . . . ." *Davison v. Hines*, 291 Ga. 434, 436 (1) (729 SE2d 330) (2012) (citation and punctuation omitted). And "[s]ummary judgment is proper only if, construing the evidence most favorably for [the caveators], no genuine issue of material fact remains as to whether [Hubert's] will was the product of undue influence." *Lawson v. Lawson*, 288 Ga. 37, 37 (1) (701 SE2d 180) (2010) (citation and punctuation omitted).

With respect to undue influence, the caveators rely principally upon a presumption of undue influence that "arises when a beneficiary under a will occupies a confidential relationship with the testator, is not the natural object of his bounty, and takes an active part in the planning, preparation, or execution of the will." *Davison*, 291 Ga. at 437 (1) (citations and punctuation omitted). Although the presumption can be rebutted, it "does not vanish in the face of evidence contrary to the presumed fact," and it is, therefore, sufficient to raise a jury question as to undue influence. *Bean v. Wilson*, 283 Ga. 511, 513 (1) (661 SE2d 518) (2008) (punctuation and footnote omitted). This rule, of course, applies only if the evidence raises the presumption in the first place. Donna concedes that she had a confidential relationship with Hubert and was not the natural object

---

trial is demanded, the determination of issues of fact shall not be made by the probate judge but shall be for the jury as in cases in the superior courts."). That might be so, but we may affirm an award of summary judgment if it is "right for any reason," *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013), and in an appeal from such an award, our review is de novo, and we owe no deference to the decision of the trial court. *Chester v. Smith*, 285 Ga. 401, 401 (677 SE2d 128) (2009). Accordingly, we examine the evidence for ourselves, viewing it in the light most favorable to the caveators.

The caveators also complain that the probate court gave no weight to the expert testimony given by Hash — she is a physician — about the cognitive abilities of Hubert, and how they might have been affected by his heart condition. There is some merit in this complaint. The probate court concluded that, "in the face of his treating cardiologist's testimony to the contrary, [Hash's] opinion does not amount to a justiciable dispute," and in support of this conclusion, the probate court cited our decision in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986). "The focus in *Prophecy Corp.*, however, was on testimony made by the moving party. Even if the [cardiologist's] testimony contradicted [Hash's] testimony taken as a whole, *Prophecy* does not authorize a court to completely disregard a party's favorable testimony simply because other witnesses offer contradictory testimony." *Thornton v. Nat. American Ins. Co.*, 269 Ga. 518, 520 (5) (499 SE2d 894) (1998). See also *CSX Transp. v. Belcher*, 276 Ga. 522, 523 (1) (579 SE2d 737) (2003) ("The *Prophecy* rule . . . does not apply to . . . contradictions between a party's testimony and another person's testimony." (Citations omitted)). Consequently, in our examination of the record, we do not discount the expert testimony of Hash.

of his bounty. But Donna says that the caveators presented no evidence to show that she actively participated in the planning, preparation, and execution of the 2009 will, and for that reason, she argues, the presumption never arose.

As to her involvement with the planning, preparation, and execution of the will, the caveators point to deposition testimony in which Donna said that she called Hubert's lawyer, James E. Reynolds, Jr., after Hubert told her to do so because he needed to make some changes in his will.[3] And according to both Reynolds and Donna, she was present when Reynolds arrived to meet with Hubert at his house, and later that day when Reynolds returned with two employees. But on each occasion, she left and was not present at any discussions about the will or its execution. A few days later, Donna filled out, and Hubert signed, a check to pay Reynolds for preparing the will. This is not enough, we conclude, to prove "active part[icipation] in the planning, preparation, or execution of the will."

The undisputed evidence in this case shows not only that Donna did not prepare the will, and that she called Reynolds at Hubert's request, but also that she did not participate in Reynolds's discussions with Hubert and was not present when the will was executed. See *Lawson*, 288 Ga. at 38 (1); *Smith v. Liney*, 280 Ga. 600, 601 (631 SE2d 648) (2006). "Other than contacting the attorney at [Hubert's] direction, there is no evidence that [Donna] had any involvement in the decision to create the will or any input into its contents." *Lawson*, 288 Ga. at 38 (1). See also *Lipscomb v. Young*, 284 Ga. 835, 836-837 (672 SE2d 649) (2009) (same holding even though the beneficiary "paid for the will with cash that testator had given her"); *Pope v. McWilliams*, 280 Ga. 741, 742 (1) (632 SE2d 640) (2006) (beneficiary paid lawyer "with a check drawn on an account held jointly with" the testator). The only evidence about Hubert's decision to execute the will shows that Donna played no part in it. See *Simmons v. Norton*, 290 Ga. 223, 224-225 (719 SE2d 421) (2011). Because there is simply no evidence that Donna took an active part in the planning, preparation, or execution of the 2009 will, no presumption of undue influence could arise despite the existence of a confidential relationship between her and Hubert. See *McConnell v. Moore*, 267 Ga. 839, 840 (483 SE2d 578) (1997).

In the absence of a presumption of undue influence, a confidential relationship, without more, would not support a finding of undue influence on Donna's part. See *Harper v. Harper*, 274 Ga. 542, 544 (2)

---

[3] Reynolds also acknowledged that Donna probably made the phone call because Hubert likely needed that kind of assistance.

(554 SE2d 454) (2001). "Even when a confidential relationship exists, to support a claim of undue influence, any influence shown must be influence that would give dominion over the will to such an extent as to destroy free agency, or constrain one to do against his will what he is unable to refuse." *Curry v. Sutherland*, 279 Ga. 489, 490-491 (2) (614 SE2d 756) (2005) (citations and punctuation omitted).

> It is insufficient to show merely that the persons receiving substantial benefits under the instrument sought to be propounded occupied a confidential relationship to the testator and had an opportunity to exert undue influence. The indulgence of mere suspicion of undue influence cannot be allowed.

*Harper*, 274 Ga. at 544 (2).

In this case, Reynolds had prepared, and Hubert had executed, prior wills that were substantially the same as the 2009 will. See *Lawson*, 288 Ga. at 38 (1). Reynolds testified at his deposition that whenever Hubert changed his will so as to leave his farm to Donna, he consistently explained that Hash was well-off financially and that Donna enjoyed the farm and would be less likely to sell it and more likely to keep it intact, although Hubert was aware that Donna was not restricted in the sale of the farm. This deposition testimony is relevant to the issue of undue influence and to explain Hubert's disposition of his property. See *McCormick v. Jeffers*, 281 Ga. 264, 267 (3) (637 SE2d 666) (2006). But the fact that Hubert previously executed wills that provided for Hash is of no consequence given that the 2009 will specifically revoked all prior wills, and testimony about Hubert's declarations regarding his intent to leave the farm to Hash are similarly irrelevant because such declarations by a testator are inadmissible to prove the actual fact of an improper influence by another. See *Lawson*, 288 Ga. at 38 (1); *Lipscomb*, 284 Ga. at 837.

The affidavits of Reynolds and the two attesting witnesses affirm that when the 2009 will was executed, Hubert's actions were voluntary and he continued to show a strong will and great mental sharpness despite his advanced years and declining physical health. See *Lawson*, 288 Ga. at 38 (1). Hubert's treating cardiologist, who evaluated him on the day after execution of the 2009 will, affirmed that Hubert's mental and cognitive abilities were unchanged from his previous visit, that he had strong cognitive function, an alert mind, and a strong will, understood his medical condition, made his own medical decisions, and was mentally competent to understand his affairs and properties and to make a conscious and sound decision as to their disposition. See id. Hash reviewed the progression of Hubert's

medical condition and found significant cognitive impairment based on her last visits with him on May 30 and 31, 2009. But the alleged "improper influence must operate on the testator's mind at the time the will is executed." *Prine v. Blanton*, 290 Ga. 307, 310 (2) (720 SE2d 600) (2012) (citation omitted). And evidence about Hubert's declining physical and mental health is of little relevance in any event, given the absence of any evidence that Donna actually attempted to exert influence with respect to Hubert's will and its execution. See *Simmons*, 290 Ga. at 225; *Lipscomb*, 284 Ga. at 837.

Both of the caveators admitted that they were not aware of any evidence that Donna had done anything wrong to Hubert or any particular act to unduly influence him. No deposition or affidavit showed any attempt by Donna to exert power or control over Hubert, to isolate him from visitors, or to deceive or coerce him. See *Prine*, 290 Ga. at 310 (2); *Smith*, 280 Ga. at 601. Because the caveators failed to come forward with any evidence that Donna attempted to influence the making or the contents of Hubert's will, the probate court's grant of summary judgment to Donna on the issue of undue influence was proper. See *Lawson*, 288 Ga. at 38 (1); *Lipscomb*, 284 Ga. at 837.

3. Finally, we turn to the contention that Donna was not entitled to summary judgment on the caveators' claim of fraud or misrepresentation. "The type of fraud that will invalidate a will must be fraud which operates upon the testator, i.e., a procurement of the execution of the will by misrepresentations made to him. It exists only when it is shown that the testator relied on such a representation and was deceived." *McDaniel v. McDaniel*, 288 Ga. 711, 716-717 (2) (b) (707 SE2d 60) (2011) (citation and punctuation omitted). See also OCGA § 53-4-12 ("A will is not valid if anything destroys the testator's freedom of volition, such as . . . misrepresentation . . . .").

The caveators assert that Donna made two material misrepresentations to Hubert. First, they claim, Donna persuaded Hubert in 2009 that she no longer lived with Lynn,[4] whom Hubert had come to dislike, believing that Donna "could do better." The caveators point to evidence, in Henry's deposition testimony and the affidavit of Hash's father, that Hubert was under the mistaken impression that Lynn no longer lived on the farm.[5] But there is no evidence as to how Hubert came to have that belief, much less that his mistake was the result of any misrepresentation by Donna. "Fraud consists of a '(w)illful

---

[4] Such a representation would have been false, as Donna continued to live with Lynn and in fact married him on her birthday, June 22, 2009, the day after Hubert's death.

[5] At her deposition, Donna denied that there was ever a time when Hubert thought that Lynn was not living with her on the farm.

misrepresentation of a material fact . . . .' OCGA § 51-6-2 (a)." *Harper*, 274 Ga. at 545 (3). Even if there was evidence of a willful misrepresentation, there is no evidence to suggest that, had Hubert known the truth, his response to the correct information would have been any different. See id. He had previously executed wills leaving the farm to Donna even though he knew of her continuing relationship with Lynn and would question her judgment as a result. And as discussed above, the only reasons shown in the record that Hubert would change his will from time to time so as to leave the farm to Donna were that Hash's financial condition was sound and that Donna loved the farm and would be less likely to sell it or subdivide it. There is no evidence whatsoever that the alleged misrepresentation by Donna about her relationship with Lynn deceived Hubert into making his 2009 will. See *Bohlen v. Spears*, 270 Ga. 322, 325 (2) (509 SE2d 628) (1998). Consequently, the only conclusion that can be drawn from the evidence is that her allegedly false statements about that relationship are unrelated to Hubert's execution of any will leaving the farm to Donna and simply do not support a claim that the execution of the 2009 will was the result of misrepresentations by Donna. See *Edwards v. Shumate*, 266 Ga. 374, 376 (2) (468 SE2d 23) (1996).

The second misrepresentation asserted by the caveators is that Donna convinced Hubert that she would preserve the farm.[6] But the caveators have presented absolutely no evidence that Donna ever told Hubert that she would not sell or subdivide the farm, and there is not even any evidence that Hubert's belief in that regard had changed since previous wills. See *Harper*, 274 Ga. at 544 (2) ("Because there is no direct or circumstantial evidence of any fraudulent misrepresentations made by Propounder to Testator, summary judgment was proper as to that theory."). Instead, the evidence showed only that when Hubert executed the 2009 will and previous wills, he believed Donna would be less likely to sell or subdivide the farm and he understood she would not be prohibited from doing so. As a result, even if there was a misrepresentation, there was no evidence that Hubert was relying on any alleged promise by Donna to preserve the farm. See *Lowry v. Hamilton*, 268 Ga. 373, 374 (2) (489 SE2d 827) (1997) (no evidence that testatrix "believed or relied upon any" of propounder's statements).

In short, the caveators fail to point to any specific evidence or reasonable inference of fraud. "[E]vidence of the mere opportunity

---

[6] There is at least some evidence that such a representation would have been false. On May 11, 2009, Donna and Lynn discussed a possible sale of the pecan grove with a person who had previously met only with Donna and Hubert to discuss a lease.

and motive for fraud is insufficient to create an issue of fact on such a claim." *Edwards*, 266 Ga. at 376 (2) (footnote omitted). Because we find no evidence in the record that would create a genuine issue of material fact as to fraud, we conclude that the trial court properly granted summary judgment on this issue. See id.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 18, 2013 —
RECONSIDERATION DENIED DECEMBER 11, 2013.

*Kermit S. Dorough, Jr., Jesse G. Bowles III*, for appellants.
*Perry & Walters, Richard W. Fields, George P. Donaldson III*, for appellee.