In the Supreme Court of Georgia

Decided: September 12, 2016

S16A1115. WEBB v. REEVES et al.

BLACKWELL, Justice.

Joseph Thomas Schmidt was diagnosed with schizophrenia, and in 1973, the Veterans Administration began to pay disability benefits to Schmidt. Three years later, the VA appointed Dale L. Groenenboom as his guardian and conservator. In 1997, Schmidt moved into a personal care home, which was owned and operated by Charles and Jerry Reeves. Then, in 2010, Schmidt was diagnosed with kidney cancer. At that time, Groenenboom still served as his guardian and conservator, and Schmidt still lived in the Reeveses' personal care home. Schmidt was hospitalized in July 2010, and he made a will, which named Groenenboom as the executor. In that will, Schmidt left nothing to his twin sister, Judith Webb, and he instead left all of his estate to Groenenboom and the Reeveses.[1] Schmidt died in October 2013, and Groenenboom then filed a

---

[1] Schmidt left 20 percent of his estate to Groenenboom, 40 percent to Charles Reeves, and 40 percent to Jerry Reeves.

petition to probate the will in solemn form. Webb filed a caveat. The probate court denied the caveat and admitted the will to probate, and Webb appeals.[2] We affirm the judgment of the probate court.

Webb contends on appeal that Schmidt lacked testamentary capacity as a matter of law when he made the July 2010 will.[3] More specifically, Webb argues

[2] This marks the second appearance of this case in our Court. In 2014, the probate court dismissed the petition to probate the will for a failure to produce the subscribing witnesses at a hearing. Groenenboom and the Reeveses appealed from that dismissal, and we reversed and remanded for further proceedings. See Reeves v. Webb, 297 Ga. 405 (774 SE2d 641) (2015).

Because Webb challenges the validity of a will, this case falls within the current appellate jurisdiction of this Court in cases involving wills. See In re Estate of Lott, 251 Ga. 461 (306 SE2d 920) (1983). We note, however, that in cases in which a notice of appeal is filed on or after January 1, 2017, the Court of Appeals will have jurisdiction of "[a]ll cases involving wills," as well as other categories of civil cases that currently come directly to this Court, pursuant to the Appellate Jurisdiction Reform Act of 2016. Ga. L. 2016, p. 883, § 3-1 (codified as OCGA § 15-3-3.1 (a) (3)). See also Williford v. Brown, 299 Ga. 15, 16 (2), n. 1 (785 SE2d 864) (2016).

[3] Webb also contends that the probate court erred when it concluded that Webb had failed to meet her burden to prove undue influence and when it denied her motion for new trial, which was based upon a claim of newly discovered evidence. These contentions, however, lack merit and do not require much discussion. With respect to undue influence, we understand the probate court to have found that Groenenboom and the Reeveses carried their burden of rebutting any presumption of undue influence, notwithstanding that the probate court was not explicit on that point in its order. The probate court, therefore, applied the proper legal standard, see Simmons v. Harms, 287 Ga. 176, 179-180 (2) (695 SE2d 38) (2010), and there is evidence to support the finding of the probate court on undue influence. As for the newly discovered evidence, the probate court did not abuse its discretion when it denied the motion for new trial, inasmuch as the record supports a finding that Webb failed to meet all of the requirements for obtaining a new trial on such grounds. See Carr-MacArthur v. Carr, 296 Ga. 30, 34 (2) (764 SE2d 840) (2014); Collins v. Kiah, 218 Ga. App. 484, 485-486 (2) (462 SE2d 158) (1995).

that Schmidt was unaware of the extent of his estate. Under Georgia law, "[t]estamentary capacity exists when the testator has a decided and rational desire as to the disposition of [his] property." OCGA § 53-4-11 (a). This standard for testamentary capacity does not require the testator to know the precise property holdings of which his estate consists, only that he be "capable of remembering generally what property . . . [is] subject to the will's disposition." Patterson-Fowlkes v. Chancey, 291 Ga. 601, 602 (732 SE2d 252) (2012). Groenenboom testified that he had informed Schmidt prior to the execution of the will that Schmidt had "thousands" in his estate. There is evidence that Schmidt had been told that his estate was "large" or "sizeable." There also is evidence that Schmidt was generally uninterested in money, and there is no evidence that he ever asked for more information about the extent of his holdings. Upon this record, we conclude that Schmidt had enough knowledge about the nature and extent of his estate to sustain a finding that he had a decided and rational desire as to the disposition of his property.[4]

---

[4] Although Webb contends that Groenenboom failed to adequately apprise Schmidt of his holdings when he told Schmidt that Groenenboom had "thousands" — in fact, the value of his holdings was in the hundreds of thousands — that is not the only evidence of Schmidt's awareness of his holdings. In all, the record "fall[s] far short of demonstrating that [Schmidt did] not possess [the requisite] decided and rational desire as to the disposition of

Webb also claims that medical records made around the time of the execution of the will show that Schmidt had memory problems and was not oriented to date, day of the week, place, and person. While *some* notes in the medical records certainly suggest memory problems and disorientation, the records as a whole have notations that reflect variable states of mind around the time that the will was executed, and we note that the records generally reflect that Schmidt's state of mind improved as he was hospitalized and close in time to the execution of the will. Even if there was some evidence that Schmidt was not lucid at times, the record does not demand a finding that he was not lucid when he executed the will. After reviewing all of the evidence — including not only the medical records that show continuing changes in Schmidt's condition, but also the testimony of his lawyer and the self-proving affidavits executed by the subscribing witnesses — we cannot say that the record on appeal demonstrates a lack of testamentary capacity as a matter of law. See Curry v. Sutherland, 279 Ga. 489, 489-490 (1) (614 SE2d 756) (2005).

Judgment affirmed. All the Justices concur.

---

[his] property." Patterson-Fowlkes, 291 Ga. at 602.

4